JUDGE LINDSAY
delivered the opinion oe the court.
The ordinance approved August 9, 1870, provided that Shelby Street, from the south side of Kentucky Street to the north side of Milk Street, except twelve feet on either side for sidewalks, should be improved by being graded, according to the provisions of an ordinance approved May 5, 1870, entitled “General ordinance concerning the improvement of streets,” and by curbing, subpaving, and macadamizing, according to the provisions of said last-named ordinance, and that the work when done should be paid for by the owners of ground fronting on the improvement.
Against the property of these appellants there was assessed in the aggregate the sum of $4,974.22, and from a judgment subjecting their said property to the payment of that sum, with interest from November 2, 1871, they have appealed.
It appears that they own a tract of land situated within the corporate limits of the city of Louisville, fronting on the west side of Shelby Street eighteen hundred and fifty feet.,' and running back six hundred and two and a half feet, containing twenty-five acres. This parcel of land is bounded on the west by Shelby Street, on the north by Kentucky Street, and on the east by what is denominated the extension of Clay Street. It does not appear, however, that the extension has actually been made, nor that the city has title to the ground it purports to *181 cover. On the south appellants’ land is joined by the land of R. A. Robinson, which borders on a street the name of which is not laid down, on the two plats on file with the record.
It is manifest from these plats that appellants own in this one body land enough to form from four to six squares as large as those into which the built-up portions of the city are. divided. The extension of Cane and Milk Streets across Shelby and eastwardly to the supposed line of Clay Street, would divide their land into three squares, each of which would nearly double in area the squares lying immediately east of Shelby Street. This land has neither been subdivided into building lots nor squares, and it appears from the evidence to. be used, if at all, as farming land.
The question to be decided is whether such land can be subjected under the provisions of the twelfth section of the city charter of 1870 to the costs of street improvements. Said section provides that the public ways of the city of Louisville shall be under the exclusive management and control of the city, with power to improve them by original construction and reconstruction, and that such improvements shall be made “at the exclusive cost of the owners of lots in each fourth of a square,” and that a lien shall exist on these lots for the costs incurred, with interest; and further, that “no one shall be assessed or charged with the improvement of public ways excepting those binding on the fourth of a square of which his lot forms a part, apportioned as aforesaid;” and still further, that “when improvements on the public ways have been made, and the contracts therefor completed, the owners of the lots taxable therefor, or their agents or representatives, if known to the city engineer, and residing within said city or Jefferson County, shall have written notice of the time and place fixed for the inspection and acceptance of the same by the city engineer.”
*182 The section from which these quotations are made embraces the entire grant of power to the city government, so far as the specific taxation of real estate for the improvement of adjacent public ways is concerned, and it is apparent from the terms of the grant that taxation of this character can not be imposed upon real estate that has not been laid out into squares. The assessments are to be made against the lots forming the one fourth of a square,” and there is no authority given to tax any realty for this purpose that does not lie within a tax-district so formed. That it ivas the intention of the legislature to tax realty laid out into squares differently from that not so laid out is manifested by section 71, which declares that “all tracts of land within the limits of said city not laid off into squares or lots shall be assessed for taxation by the acre.” But, independent of this legislative distinction, we would be compelled to hold that the authority of the city to impose the specific taxation involved in this case is confined to that description of property coming clearly within the terms of the grant.
“ It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property unless the power be plainly and unmistakably given.” Such authority is wholly statutory, and it must be clearly given and strictly pursued; and this rule applies to assessments for local improvements. (Dillon on Municipal Corporations, sec. 605; Kniper v. City of Louisville, 7 Bush, 599, and authorities cited.)
There is nothing, in the opinion of this court, in the case of the Broadway Baptist Church (8 Bush, 508) from which it can be inferred that the general application of this rule is suspended as to the charter of the city of Louisville. It was held in that case that by reason of the peculiar provisions of said charter ordinances for the improvement of streets are not void merely because the General Council fails to follow strictly its delegated powers; but this legislative' modification of the *183 rule is confined to such ordinances, and there is no intimation that a liberal construction of the charter can be resorted to for the purpose of enabling the city government to exercise the sovereign power of taxation.
The power to improve the streets at the exclusive cost of the owners of adjacent landed estate must first be established either by a grant in express words or by necessary implication, and then the charter provision that “ no error in the proceedings of the General Council shall exempt from payment, after the work is done as required by ordinance or contract, can be relied on to enable the courts to aid the defective execution by the council of its delegated powers.
The difficulty in this case is to show that the city government has the power to impose the tax at all. If it has such power, then the charter imposes upon appellants the duty of paying their proper proportion of the cost incurred in making the improvement, and the chancellor can correct all mistakes of assessments and do justice to all parties concerned. It is manifest that the tax can not be assessed according to the mode prescribed by the charter, and that if it be upheld the chancellor must exercise the legislative function of establishing for this particular case a rule of assessment not to be found in' the city charter.
The city engineer appreciated this difficulty, and in determining the amount to be assessed against appellants he formed out of their tract of land, an imaginary square, bounded .north by Kentucky Street, west by Shelby Street, east by the supposed extension of Clay Street, but with no street at all binding on its southern boundary.
It is evident that this subdivision of territory does npt constitute a square in the sense in which that term is defined in the Broadway Baptist Church case. It is not bounded on all sides by principal streets; nor can appellants’ entire tract of land be treated for the purposes of local street taxation as *184 a square. Its area is of itself a sufficient answer to any such proposition, and the plats before us show unmistakably that as population is attracted to the portion of the city in which it lies the public convenience will demand that it shall be subdivided into squares approximating in size those into which the city is generally laid off.
Under the 71st section of the charter, heretofore quoted, appellants’ realty can be taxed for general municipal purposes in no other way than by the acre; and it would be a singular rule of construction to hold that under the charter it could not be treated as city property for the purposes of general taxation, and yet that it was subject to local assessments, which of necessity are far more onerous and oppressive.
We are fortified in the conclusions thus reached by the action of the legislature during its session of 1871 and ’72. The ninth section of “An act to amend the charter of the city of Louisville” (Session Acts 1871-72, p. 440) provides for taxation for the improvement of public ways of just such property as that owned by appellants. The fact that such a provision was made shows that the legislature'was of opinion that up to that time no such power had been delegated.
The provision of the 12th section of the city charter, that the city shall in no event be liable for the cost of street improvements without having the right to enforce it against the property receiving-the benefit thereof, does not affect the rights of these appellants. That provision applies only in cases in which the city has authority to make the improvement at the exclusive cost of those owning the property benefited.
The judgment must be reversed, and the cause remanded with instructions to dismiss the petition so far as relief is prayed against appellants or their property.