JUDGE COFER
delivered the opinion oe the court.
Having improved a portion of a new street in Louisville, called East Broadway, under a contract made with the mayor and approved by the General Council, the appellees brought this suit in the Louisville Chancery Court against the appellant Craycraft, who owns ground on each side of the street, to recover that part of the contract price of the work done by them which was apportioned by the city council as Craycraft’s portion of the cost of the improvement. They made the city a defendant, and prayed for judgment against it in the event they were from any cause unable to recover against Craycraft.
Craycraft’s ground on the west side of the street constitutes part of a square, and is liable to assessment for street improvements, under section 12 of the city charter; but his ground on the east side of the street has not been defined into a square, and in order to subject it to assessment it was necessary that *699 the General Council should prescribe by ordinance or resolution the depth from the street to which the assessment should extend (Lucas’s Charter and Ordinances, sec. 9, act February, 1872, p. 71), and this not having been done, the ground east of the street can not be subjected to the assessment made against it.
Having ascertained that the ground east of the street could not be legally assessed, the vice-chancellor referred the cause to the city engineer as a special commissioner to ascertain how much of the entire amount of the assessment against Craycraft was legally chargeable upon his property west of the street; and upon the coming in of the report of the engineer judgment was rendered against Craycraft for the amount so ascertained, and against the city for the residue; and from that judgment both Craycraft and the city have appealed.
1. It is insisted by Craycraft’s counsel that the petition does not contain a statement of facts constituting a cause of action. Whether it does or not is the first question to be decided.
Section 5 of article 7 of the charter of 1851, which was in force when the present charter was passed, required that in suits to enforce liens for street improvements all persons liable under the same contract should be made parties, unless they had previously paid their proportions of the cost, and the plaintiff was required to allege that all persons liable who were not made parties had paid their shares of the assessment. This allegation was held to be necessary to show a cause of action on the contract; and as no such allegation is contained in the petition in this case, its sufficiency must depend on the question whether the foregoing provision of the charter of 1851 is still in force.
The present charter provides that “all laws and parts of laws having special application to the city of Louisville, so far as the same are in conflict with this charter, are hereby *700 repealed.” It also provides for enforcing liens like that asserted in this case, but does not contain the foregoing provision requiring all persons liable under the same contract to be made parties to a suit against any one of them. Having-inserted a provision in the present charter in reference to suite of this kind, we ought to assume that such provision contains the whole legislative will on that subject, and that the provisions of the old charter on the same subject were intended to be repealed. The right of action is given and the mode of proceeding is left to be governed by the Code of Practice, whereby a- uniform system of practice is established.
2. The ordinance' under which appellees’ contract was made authorized the improvement of East Broadway from the dividing line between Craycraft’s land and Cave-Hill Cemetery to the city limits, and required the work to be contracted for by squares. The charter gives the city power to improve its highways as may be prescribed by ordinance, and it was therefore competent for the General Council to designate in the ordinance the points between which improvements should be made; and a contract for the improvement of East Broadway to Highland Avenue, the nearest street to the point of commencement, was a compliance with the .provisions of the ordinance; for whether that part of the street between the cemetery line and Highland Avenue is a square or not, it was certainly in compliance with the ordinance to let that part in a separate contract. Any other construction would sacrifice the substance of the ordinance to a mere matter of form. It was evidently intended by the passage of the ordinance to improve the street from the cemetery line to the city 'limits; but if the construction of the clause requiring the work to be contracted for by squares which is insisted on by Craycraft’s ■ counsel be adopted, and that part of the street does not in fact constitute a square, then the whole object would be defeated by attempting to adhere to a mere form. *701 If the contract as made was not authorized, then none could have been made which would have been valid under the ordinance; and if none could have been legally made, it would result that the city is not authorized to improve the streets as may be provided by ordinance. If the contract had extended over the line between Cave Hill and Craycraft’s land, it would have been unauthorized; and if it had extended in the opposite direction beyond the center of Highland Avenue, it would have been invalid under the ordinance, because it would then have included parts of two squares.
If the charter, instead of the ordinance, had required the work to be contracted for by squares, and that part of the street embraced in appellees’ contract does not constitute a square, the position taken by counsel would be maintainable.
3. It is next insisted for Craycraft that inasmuch as the ground east of the street can not be assessed, because the depth to which the assessment shall extend on that side was not fixed in the ordinance as required by the ninth section of the act of February, 1872, amending the city charter, it is impossible to ascertain what proportion of the whole cost is legally chargeable upon the ground west of the street, and that he is therefore not liable for any part of the assessment on either side.
The charter provides that “street improvements shall be made at the exclusive cost of the owners of lots in each fourth of a square, to be equally apportioned according to the number of square feet owned by them respectively;” and it also provides that “no error in the proceedings of the General Council shall exempt from payment after the work has been done as required by ordinance or by contract; but the General Council or the courts in which suits may be pending shall make all corrections, rules, and orders to do justice to all the parties.”
The work was done in this instance according to both *702 the ordinance and the contract, and both were valid, and a case was therefore made out in which, if there was any error in the proceedings of the General Council in making the apportionment, the court had power to correct it in such way as to do justice to all parties; and although Craycraft did not in his answer point out any objections to the apportionment, or make any objection to it except such as went to the validity of the ordinance and contract, the court below, on discovering that the ground east of the street was not subject to the assessment, referred the case to the city engineer “to re-adjust the apportionment, taking as his stand-point that the property on the west side of East Broadway to a depth of half the distance to Baxter Avenue (a street running nearly parallel with East Broadway), and from the line between Craycraft and the cemetery to Highland Avenue, is liable for one half of the cost of the improvement, and report the proportion of said one half chargeable to Craycraft.”
The engineer made a report in accordance with the directions of this order, and no exceptions having been filed, it was made the basis of the judgment rendered.
The court having authority to correct the error of the council in making the assessment, limited only by the requirement that it should be done in such way as to do justice to all parties, and there being no complaint that the proportion assessed by the court does injustice to Craycraft, except on the ground that he ought not to have been made liable for any thing, we can not decide that injustice was done him. If the proportion of the entire cost assessed against him was too large, that fact should have been suggested to the court below by exception to the report of the engineer, and no such exception having been taken, we must assume that no objection based on this ground existed, and therefore that the apportionment was just, if as matter of law Craycraft was liable for any thing.
*703 .4. It is insisted by counsel for the city that as Crayoraft owns ground on both sides of the street, and both parcels' are benefited by the improvement, and might have been assessed if the ordinance had so provided, he can not now complain if all that might under other circumstances have been charged upon his land, on both sides, is now charged upon that on one side.
This point does not arise in this case unless it shall turn out that the correctness of the judgment against the city depends upon the question whether Crayoraft is liable for the whole cost of the improvement.
5. It is claimed that the judgment against the city, for that part of the price of the work done by appellees which Crayoraft can not be compelled to pay, is prohibited by the provisions of the charter, and is therefore erroneous. The charter provides that “in no event shall the city be liable for such improvements (of streets) without having the right to enforce it against the property receiving the benefit thereof,” so that no one shall be assessed or charged with improvements of public ways except those binding on the fourth of a square of which his lot forms a part. The exact meaning of this clause is not very apparent; but it was evidently inserted for some purpose, and some effect must be given to it in proper cases. We have heretofore decided that it does not apply to cases in which the city has no power to make the improvement at the cost of the owners of adjacent property, and in that class of cases the city will be liable to contractors who-have done work under a contract regularly made under a valid ordinance. (Caldwell v. Rupert, 10 Bush, 179; City of Louisville v. Nevin, 10 Bush, 549.)
In those cases it was said that the provision of the charter under consideration only applies where the city had authority by proper proceedings to cause the improvement to be made a1 the exclusive cost of the owners of adjacent property.
*704 In this case the city had authority to make the improvement at the cost of property-holders. The act of February 9, 1872 (supra), gave authority to the General Council, by designating by ordinance or resolution the depth back from the street to be assessed for that purpose, to charge a portion of the cost of improving the street on Cray era ft’s property lying east of it, and it is only because of the failure to do so that he has been adjudged not to be liable. As the steps necessary to charge him or his property have not been taken, the city, if compelled to pay the appellees, can not' enforce payment from Craycraft or subject his land; and as the charter declares that the city shall in no event be made liable for street improvements without having the right to enforce payment against the adjacent property, it can not be made liable in this case.
It is said, however, that this construction is inconsistent with the decision of this court in Louisville v. Nevin (ante, 549). In that case it appeared that the city had by a valid contract, made under a valid ordinance, caused the sidewalk on the south side of Jefferson Street to be paved. A part of the paving was done in front of a graveyard, and we held that the graveyard lot could not be sold, and that the city was liable to the contractor. That decision rested on the ground that the General Council had express authority under the charter to improve all the streets in the city, and that, as it could not by any legal means make the improvement in front of the graveyard a charge upon it, there was implied authority, resulting from the express authority to improve the streets, to' make such improvements at the cost of the city. Such a construction was necessary in order to give effect to every part of the charter. When, by taking the proper steps, the General Council could have made the improvement at the cost of the owners of adjacent property, its power to improve the streets may be executed in that way, and the city can in no event be made *705 liable unless it will have the right to proceed to make the property-holders liable; but if the nature or ownership of the adjacent property is such that no steps which could have been taken would have rendered it or its owner liable, then the city must pay for the improvement, or it will have as to such work no means of executing its general power to improve all streets.
But if we hold, as we are asked to do in this case, that the mere omission of the General Council, in cases where it had power to do so, to take the steps necessary to make an improvement a charge on the owners of adjacent property will render the city liable, then no effect whatever can be given to the provision supra of the charter; and therefore, in order to give that provision some effect, we are compelled to hold that whenever the General Council has power by proper proceedings to improve a public way at the cost of the owners of adjacent property, it has no power, either by affirmative action or by neglecting to take proper steps to render such owners liable, to make the city responsible to the contractor.
But it is insisted that this is inconsistent with former decisions of this court, and several cases are cited to prove it. We do not hesitate to admit that the cases of the City of Louisville v. Hyatt (5 B. Mon. 200), Guthrie v. The City of Louisville (6 B. Mon. 575), Kearney v. The City of Covington (1 Met. 345), and Murphy v. The City of Louisville (9 Bush, p. 189), and perhaps some others, when considered without reference to the provisions of the charters under which the litigation in those cases arose, seem to be in conflict with the decision in this case. None of the charters of Louisville prior to the present one contained any provision declaring, in terms or in effect, that the city should not be made liable for the cost of street improvements. They prescribed the manner in which such improvements should be made at the cost of the owners of adjacent property, but as to what should be the *706 consequence of a failure to take the steps necessary to charge such owners the charters were silent. When this was the case this court repeatedly held that if the city authorities failed to comply with some provision of the charter or of au ordinance, or omitted to perform some duty by which the property-owners were released from liability to pay the contractor, the city would be liable.
The same rule was announced in a case arising under the charter of Covington. (1. Met. 345.) In that case it was argued for the city that the charter limited the power of the city council in such a way that it had no power to bind the city to pay for the original construction of streets. The court decided, as it had previously done in reference to the same provision, that there was nothing in the charter which expressly or by implication restricted the right of the council to improve the streets at the cost of the city, and then proceeded to decide that, the city council having made a contract for the improvement of a street, and failed to take the steps necessary to bind the owners of adjacent property to pay for the work, the city was liable.
Following the doctrine of those cases, this court in the case of Murphy v. The City of Louisville (9 Bush, 189) used language which counsel suppose to be in direct conflict with the view we have taken.
That case did not arise under the present charter, and the only question involved in it was whether a contract had- been made with the city which under the old charter bound it to pay for the work. It was clear that if a valid contract had been made with Murphy by the city council, he was entitled to recover against the city, because, there being no provision declaring that the city should not be made liable, the case would have fallen directly within the rule laid down in Hyatt’s and Guthrie’s cases, and in the case of Kearney. And in arguing the question whether, the city was liable this court *707 then said, “ In the present case, if the contract had been fully executed by the city and the work and labor performed by the appellant, and the city authorities had failed to comply with some provision of an ordinance, or had omitted to perform some duty by which the property-owners on the street where the improvement was made were released from liability to pay the contractor, then the city would be liable.” Although this was said arguendo, to illustrate the decision then made, we still approve what was then said.
The supposed contract under which the appellant claimed was entered into under the old charter, which contained no provision that the city should not be made liable; and undoubtedly, if the contract had been valid, and the owners of the adjacent property had escaped liability through some default of the city authorities, the city would have been liable. But there is enough in that opinion to show that the court then recognized the principle upon which we have decided this case.
We then quoted with approval Zottman v. San Francisco (20 Cal. 96) and Brady v. The Mayor of New York (16 How. 432). In the former case Mr. Justice Field said “that a party dealing in a matter expressly provided for in the charter is bound to see to it that the charter is complied with. If he choose to take the hazard or neglect this, he is a mere volunteer, and must suffer.” In the latter case the court said “ that persons dealing with a corporation, the mode of whose action is limited by the charter, must take notice of these restrictions, and see to it that the contract is made in the manner authorized by the charter.”
In the case of Swift v. Williamsburg (12 Barb. 427) it appeared that the common council had power to open and improve streets only upon petition signed by one third of the persons owning land within the limits of the district to be assessed for the cost. A party entered into a contract with *708 the corporation to improve a street, upon the false representation by the city council that such petition had been made, and it was held that the provision of the law being public, and all the proceedings leading to the determination by the council to make the improvement being matters of public record, all persons were chargeable with notice of the law and the proceedings of the council, and that, notwithstanding the false representations made by the council, no action would lie against the city for work done under the contract. This case was also quoted with approval by this court in Murphy’s case, and we then said, “ Those dealing with the corporation through its officials are bound to take the same notice of its laws and ordinances that a citizen of the state is with reference to the laws of the state.”
The principle deducible from these cases is that persons dealing with a municipal corporation are bound at their peril to know that the contracts made by the officials of such corporation are made in the mode pointed out by the charter and ordinances; and if they fail, they must suffer the consequences. How much more then the necessity for holding that they shall know, at their peril, that those things have been done which are required to be done in order to make the owners of adjacent property liable for the cost of the work, when they were bound to know that if the city council had power to charge the cost of the work upon the property benefited by it, they had no power to make a contract under which the city could be made liable.
But it is said the General Council was the general agent of the city, and that, inasmuch as it had power to contract for the work, the city is liable, although the agent transcended its powers. We do not so understand the law of agency. We have already seen that those contracting with the city council were bound to take notice of limitations, not only upon its power, but also as to the mode of contracting; and we must *709 presume that the appellees knew that which both the law and their own security made it their duty to know, and therefore that they knew the General Council had no power to make the city liable to them, unless it had no power to make the work at the exclusive cost of the owners of adjacent property. Assuming then that they knew what it was their duty to know, we have a case in which one contracting with an agent in a matter in which he knew the agent had no authority to bind the principal is insisting that the principal shall be held bound notwithstanding. We need not cite authority to prove that such is not thé law, even where there is a general agency. The rule is that one dealing with an agent whose powers he knows are limited deals at his peril, whether the limitation be as to the extent of the agent’s powers or the mode of their execution.
Nor can the city be held liable on the ground that the appellees may not have known that no such ordinance or resolution had been passed as would render Crayeraft’s adjacent property liable, or that his ground had not been defined into a square. They had the means of knowing what the facts were, and upon the principle of the cases cited supra, and especially the cases of Swift v. Williamsburg and Murphy v. Louisville, they were bound to learn them.
The city can not be held liable on the ground that the appellees have expended their labor and money on a street which is now being used by its people. This point was fully considered in Murphy’s ease, and we can not improve upon the argument there made. We are aware that this decision seems harsh, but we have only one alternative: we must either decide that a whole clause of the city charter is nugatory and refuse to give it any effect whatever, or we must hold that, having power by proper proceedings to make the improvement at the exclusive cost of the owners of adjacent property, the General Council could not bind the city to pay for it.
*710 If the clause in question does not apply to a case like this, we are unable to imagine, and counsel have been unable to indicate, one to which it would apply.
If. whenever the General Council fails to take the steps necessary to bind the owners of adjacent property the city is to be made liable for the cost of improvements for which such owners might have been compelled to pay, then we have the anomalous result that, although we have in the new charter an important clause not in the old one, indicating a clear intention to change the law, the law is in fact not changed at all. A construction producing such a result can not be the true one.
Wherefore the judgment against Craycraft is affirmed, and the judgment against the city of Louisville is reversed, and the cause is remanded with instructions to dismiss the petition as to the city.