### W. H. DULANEY, ET AL., v. BOWMAN, ET AL.

**Cities—Street Improvements—Contract for.**
> City councils may contract for street improvements without being petitioned therefor by taxpayers and property owners.

**Assessments of Property.**
> Lot owners assessed for adjoining street improvements, where made in compliance with the ordinance and contract and completed according thereto, must submit to an assessment of such lots to pay the cost of such improvement.

**Confiscation.**
> While the courts have power to arrest taxation, to prevent confiscation of property, such power will not be used, except to prevent legalized spoliation under the guise of taxation.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

January 29, 1876.

OPINION BY JUDGE COFER:

By an ordinance passed by the general council of the city of Louisville, and approved by the mayor on the 11th of September, 1872, it was ordained that Eighteenth street, from the south side of Kentucky street to the center of Oak street, be improved by grading the same according to the provisions of an ordinance approved on the 5th of May, 1875, entitled "an ordinance concerning the improvement of streets, and curbing the same with stone curb and corner stones at the intersection of streets and alleys, block paving the gutters, making foot crossings, and paving the carriage way between the gutters with macadam pavement; the work to be done at the cost of the owners of ground fronting Eighteenth street on the east to one-half the distance to Gaulbert street, and on the west side to the depth of 210 feet, the work to be contracted for by squares."

The work from the center of Harney street to the center of Gallagher street, one square, was let to G. W. Hider, who gave bond, and on the 2nd day of October entered into a written contract with the city to do the work according to the provisions of the ordinance of the 11th of September, 1872, and the 5th of May, 1870, and to complete the same within nine months from the date of the contract. In March, 1873, the contract was transferred by Hider to the appellees, Bowman & Co., with the assent of the general council.

Bowman & Co. did the work according to the specifications of the ordinances mentioned in the contract, and it was received by the city,

and an apportionment of the cost among the owners of adjacent lots and ground was made by the city engineer, and approved by the general council, apportionment warrants were issued in accordance with the requirements; and the appellants, W. H. Dulaney and G. F. Downs, who owned lots on the east side of Eighteenth street, and Mrs. M. J. Dulaney, wife of W. H. Dulaney, who owns as general estate the ground on the west side of Eighteenth street from Harney to Gallagher street, having refused to pay the assessments against them for that part of the cost of the street improvement apportioned against them respectively, this suit was brought for the purpose of enforcing an alleged lien in favor of the appellees, Bowman & Co., and to sell the lots and ground of the appellants, Downs & Dulaney, and of Mrs. Dulaney, to satisfy the claims against them respectively.

The appellants all denied that the ordinance of the 11th of September ordaining the work to be done was passed at their instance or request; they also denied that said ordinance was legally passed by the general council, or that it is legal or valid, or that the contract was a legal or valid contract; and they denied that the apportionment of the cost of the work was legal or properly made, or that they are, or either of them is liable for any part of the cost of said work.

Mrs. Dulaney and her husband, as to the ground owned by her, say that she owns by descent from her father 173 acres of land adjoining and on the west side of Eighteenth street; that said land is and has been for many years past continuously used for agricultural purposes, and has not been divided into lots or devoted to city purposes; that it was not brought within the city limits at the request of herself or her husband; that the extension of the city limits so as to bring said tract of land within them was not necessary and was unreasonable; that she does not derive any greater advantages by said extension than were enjoyed before it was made; that her land is not required and is not necessary for city purposes; that the chief object of the extension was to increase the revenue of the city without regard to her interest; and that the effect of a recovery by the contractors will be to subject her property to burthens for the benefit of others without benefit to her. They also allege that for many years before, and up to within a short time of the doing of the work the price of which is sued for, there was a turnpike road where Eighteenth street now is, which was owned and kept in repair by a turnpike company; said tract of land bordered on the turnpike, and by means of that road access could be had to the tract of land; that

38

the city brought so much of the turnpike as was within its limits but refused to keep it in repair.

In view of the fact that the land of Mrs. Dulaney is used only for agricultural purposes, and the alleged lack of any benefit resulting to her from the improvement, it is claimed that the assessment as to her is in violation of that part of section 14 of article 13 of the constitution of Kentucky, which reads as follows: "Nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him."

The vice chancellor rendered judgment decreeing a lien on and a sale of the property of Downs & Dulaney and wife, and they have appealed.

The charter of Louisville, passed in 1870, provides for constructing and reconstructing streets where the entire territory through which such streets pass has been defined into squares by principal streets, but does not provide for assessments to pay for improving or repairing streets where squares are not thus laid off. *Caldwell, et al., v. Rupert, et al.,* 10 Bush 179; *Craycrafts v. Redd & Bro.,* Mss. Opinion, April 18, 1874.

But by an act of February, 1872, it is provided that the general council should have power to provide by ordinance or resolution for the improvement of public ways where the contiguous territory is not defined into squares by principal streets; that act also provides that in such cases the ordinance or resolution shall prescribe the depth on both sides of the street to be assessed for paying the cost, and the apportionment is required to be according to the number of square feet owned by the parties respectively within the depth prescribed by the ordinance. Sec. 9, Success's Charter and Ordinances, p. 71. The charter as originally passed, and which was, on this point, applicable alone to territory defined into squares, provided the same basis of apportionment except that corner lots to the width of not more than thirty feet, and to a depth to be prescribed by ordinance, were required to be taxed twenty-five per cent. more than other lots.

The territory east of Eighteenth street was defined into a square, but that on the west was not, and in making the apportionment the northwest and southwest corner lots were assessed at twenty-five per cent. more than any others, but on the west side of the street the whole was assessed at the same rate because it did not compose a part of a square. East of the street the territory was assessed to

one-half the depth of the square extending from Eighteenth to Gaulbert street, and as those streets do not run parallel to each other, the distance to which the taxing district extended back from Eighteenth street was not the same on all the lots, the distance at the northwest corner being 180 feet and at the southwest corner 311 feet.

It will thus be observed that the original charter and the amendment of February, 1872, were both resorted to for rules to govern the assessment. On the east side the assessment extended one-half the distance from Eighteenth street to Gaulbert street, and corner lots were assessed twenty-five per cent. more than other lots as required by the original charter, while on the west side the assessment was extended back 210 feet as prescribed by the ordinance passed under the amendment to the charter.

This seems to us to have been correct. The original charter and the amendment must now be construed as one act, and when so construed the requirements are as to defined squares that the assessment shall be by the fourth of a square, and as to territory not so defined the general council is left to fix the depth to which it shall extend.

The appellees had a lien on the ground assessed, for although it is not given by the act of February, 1872, when that act is considered by itself, yet it was given by section 12 of the original charter for the cost of improving public ways, and when by amendment of the charter other ways were authorized to be improved at the cost of the owners of property, a lien exists under section 12, for the latter are as much public ways as those authorized by the original charter.

It is insisted that because the depth to which the assessment extended on one side of the street is greater than that to which it extended on the other, that the assessment is, therefore, unequal and a violation of the rule that taxation must be uniform. Exact equality in taxation is not always attainable, and it is not perceived how it could have been more nearly attained than it has been in this case. The assessment was on the square foot, and each lot owner was required to pay a proportion of the cost equal to the proportion which the number of feet owned by him bore to the whole number of feet in the boundary taxed. No reason is perceived why the general council should have so laid out the district on the west of the street as to make it contain exactly the same number of feet contained in one-half the square on the opposite side. The evidence shows that if the street next west of Eighteenth street was extended through to Gallagher street, the square bounded by Harney, Eighteenth street,

Gallagher and the street west of Eighteenth street would be 420 feet deep from Eighteenth street west, and it may safely be assumed that if the street is ever extended that will be the size of the square.

Section 7 of the city charter provides that no ordinance shall be passed by the general council until it shall have been read in each board at two several meetings, and free discussion allowed thereon, unless that provision should be suspended by a vote of two-thirds of all the members elect to the board in which the proposed ordinance is pending. The proceedings of the board of aldermen show that the ordinance for improving Eighteenth street "was read once and ordered to be read a second time; and the second reading being dispensed with by a vote of two-thirds of the members elect, the same was passed." Yeas, 9; nays, 0.

This seems to us to have been a literal compliance with the charter provision. To dispense with the second reading was to dispense with provision that the reading should be at two several meetings, for if the reading at any time be dispensed with this necessarily dispenses with such reading at a subsequent meeting; having dispensed with the second reading entirely, it cannot have been necessary to recite on the record that such reading at the next or some subsequent meeting was dispensed with.

The charter requires ordinances for the improvement of public ways, when not petitioned for by the owners of a majority of the square feet of ground liable to be assessed for such improvement, to be voted for on their final passage by yeas and nays, and to receive the vote of a majority of the members elected to each board of the general council. The ordinance for the improvement of Eighteenth street was passed, but the ordinance of the 5th of May, 1870, which prescribes how improvements shall be made, and which is referred to both in the Eighteenth street ordinance and in the contract, was not so passed; and it is agreed that the assessment is for that reason illegal. The ordinance of the 5th of May is not an ordinance for the improvement of a public way, and is not the kind of ordinance referred to in this provision of the charter; it simply prescribes how improvements of certain kinds or classes shall be made.

If that ordinance had never been enacted at all, or had been repealed, or if the Eighteenth street ordinance had referred to a report of the city engineer for the kind and specifications of the work, or to an identified paper, not even of an official character, it would have been sufficient. Nor do we concur with counsel for the appel-

lants that the Eighteenth street ordinance is invalid because ordinance 377 had not been formally repealed.

The provision in the charter of 1870 that the ordinances then in force should remain in force until repealed, did not render an express repeal necessary, nor give to those ordinances the dignity or force of state statutes. The only object of the legislature in enacting this provision was to prevent the repeal of such parts of the old charter as were repugnant to the new, from operating, as it might otherwise have done, to repeal the ordinances passed under it.

The charter provides that "improvements, as applied to public ways, shall mean all work and material used upon them in the construction and reconstruction thereof, and shall be made and done, as may be prescribed by ordinance, at the exclusive cost of the owners of lots in each fourth of a square, etc. Under this provision all construction and reconstruction of the public ways of the city are required to be done at the cost of the owners of lots in each fourth of a square, i. e., the lots in each fourth of a square must be taxed to pay for the construction and reconstruction of the public ways adjacent to such fourth of a square; and as the law contemplates the improvement of the whole street at the cost of lot owners, it results of necessity that each fourth of a square must be assessed for its proportion of street intersections.

The ordinance required the contracts for the improvement of Eighteenth street to be by squares, i. e., all that part of the street for improving which the lots in the adjacent squares were liable, should be included in one contract, and one-half the width of Harney and Gallagher streets was therefore properly included in the contract in this case.

The contract and ordinance for improving Eighteenth street provided for the construction of foot crossings across that street; but instead of putting them across it they were constructed longitudinally with Eighteenth street extending half-way across Harney and Gallagher streets. This was not a compliance with either the ordinance or the contract, and it is insisted, therefore, that the lot owners are not liable for any part of the work done. These foot crossings at the contract price cost $106.37, and their cost is included in the apportionment against the appellants and in the decree of the vicechancellor.

No objection was taken in the answer to this item, nor to any other, except by the general denials recited in the beginning of this opinion. The engineer's report of the apportionment in which each

item of the work done is separately and plainly stated, seems to have been filed with the petition; and it was appellant's duty to set forth in their answers any deviation from the terms of the contract which they meant to rely on to reduce the amount of the recovery. The work having been accepted by the city, the lot owners were certainly bound to pay for so much of it as was in fact done according to the ordinance and contract, and if any part of it was not so done, that fact should have been set up as a partial defense, and the charge for it might have been recouped from the contract price of the whole work. But as the appellants chose to rely upon a defense to the whole action, they are not entitled to the benefit of a partial defense not made.

We do not mean to be understood as deciding that mere defects in the execution of work of this kind can be inquired into after the work has been received by the city; all we mean to say is that if an item of work stipulated for is not done at all, or is done wholly outside of the requirements of the ordinance and contract, the lot owners may present that fact as a defense pro tanto.

Both the ordinance and contract sufficiently indicate the kind of improvement to be made on the carriage way. They both require macadam pavament, which is distinguished from "Telford macadam pavement" by the ordinance of the 5th of May, 1870.

The city council is made the exclusive judge of the necessity and propriety of making any street improvement which it has authority to contract for; and we need not, therefore, stop to inquire whether the old turnpike which formerly occupied the present site of Eighteenth street was sufficient for the public use or for the comfort and convenience of the owners of property situated on it.

The only remaining question deemed necessary to be particularly noticed is whether the land of Mrs. Dulaney is exempted from the assessment on account of its location and use. The evidence shows that for a considerable distance south of Harney street the ground east of Eighteenth street had been laid out into squares separated by principal streets, and the squares subdivided into lots, many of which have been sold and improved; it also shows that lots between Harney and Gallagher on Eighteenth street, and directly opposite to the land claimed to be exempted as farm land, are worth from fifteen to twenty-five dollars per front foot, and that Mrs. Dulaney's land has been considerably enhanced in value by the improvement. Her land is only separated by an ordinary street from the exterior

limits of property owned and used exclusively as city property, and which is to all intents and purposes a part of the city.

While we have repeatedly held that town taxation may be arrested by the judiciary on the ground that it is, in effect, the taking of private property for public use, we have constantly said, in effect, that such attempted taxation must be a flagrant outrage or palpable wrong before the courts can interfere. *Cheaney v. Hooser,* 9 B. Mon. 330; *City of Covington v. Southgate,* 15 B. Mon. 491; *Louisville v. Courtney,* Mss. Opinion.

The court must be able to see clearly and without danger of mistake that the execution is not in any proper sense a tax, but is in fact but legalized spoliation under the guise of taxation. It is impossible to say on the facts in this record that it is palpable that Mrs. Dulaney's land has been subjected to burthens without benefit to her. The evidence shows the contrary, and we cannot say that to compel her to pay the assessment would be the taking of her property for public use without compensation.

Wherefore the judgments appealed from are all *affirmed.*

*R. J. Elliott, for appellants.*
*Russell & Helm, for appellees.*
*T. L. Burnett, for Louisville.*