CASE 38.—ACTION BY ED C. TERRELL AGAINST THE CITY OF PADUCAH AND OTHERS TO ENFORCE A LIEN FOR STREET IMPROVEMENTS.—March 14.

## Terrell v. City of Paducah, &c.

'Appeal from McCracken Circuit Court.

L. D. HUSBANDS, Circuit Judge.

Judgment for defendants. Plaintiff appeals. Reversed.

1. Municipal Corporations—Street Improvements—Cost—Liability of City—Where an ordinance authorizing the improvement of a street and a contract executed pursuant to the ordinance provided that the improvement should be done at the exclusive cost of the owners of ground fronting on the street, and that the city should be liable for no part of the cost except at the intersection of streets and public alleys, the city was exempted from liability only in case it had authority to and did bind the abutting property for the cost of the improvement.

2. Same—Ordinance—Specification of Mode of Payment—Construction of Statute—Under Ky. Stats., 1903, section 3457, providing that the common council of third-class cities shall have power to cause streets to be graded, paved, etc., and provide for the payment of the cost out of the city treasury providing the ordinances and contracts for such work shall specify how the work shall be paid for, the proviso is directory and not mandatory, and hence it is not necessary, in order to render the city liable for the work, that the ordinance shall specify how payment shall be made.

3. Evidence—Judicial Notice—Navigability of River—Courts will take judicial notice that the Tennessee river is a navigable river.

4. Navigable Waters—Rights of Public—The rights of the public in a navigable river extend to ordinary high-water mark.

5. Municipal Corporations—Improvements—Liability of Abutting Owners—Where a city seeks to grade the continuation of a street between the high and low-water mark of a navigable

stream, intending to use such improvement, when graded. as a wharf, as the public right in the land forming the bank of the river between high and low-water mark was paramount to the rights of the owner of the adjacent fee which extended to the river, the improvement of the way for the public across their own property could not be made at the expense of the abutting property holders who were the servient owners.

6. Same—Liability of City—Where a city contracts for the improvement of a thoroughfare between high and low-water mark on a navigable river, providing that the owners of the abutting property shall be liable for the cost, and the contract for the liability of the adjoining owners is invalid because the right in the land forming the bank of the river between high and low-water mark was in the public, the court could, under Ky. Stats., 1903, section 3458, providing that on trial in equity of any case relating to the improvement of a street the court shall have the right to correct any mistake of the common council relating to such improvement so as to do complete justice to all, enter judgment against the city for the contract price of the improvement.

BAGBY & MARTIN for appellant.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. Whether the city of Paducah is liable for a street improvement in an action by the contractor against the property owner and the city, on a contract made between the contractor and the city, under a defective ordinance therefor, in the trial of which it is adjudged that the property owner is only partly liable and the action as to the city dismissed absolutely. (Section 3458, Ky. Stats.; City of Louisville v. Clark, &c., 20 Ky. Law Rep., 1265; City of Louisville v. Selvage, &c., 21 Ky. Law Rep., 349; Allen v. Wood, 20 Ky. Law Rep., 59; Elliott on Roads and Streets, sections 500-503; Ingersoll on Public Corporations, section 96; City of Covington v. Smith, 12 Ky. Law Rep., 141; City of Covington v. Wood, 10 Ky. Law Rep., 1022.)

2. The failure of the contractor to recover against the abutting property owner having resulted from the confessed mistake of the common council, by inserting in the ordinance 961 reference to ordinance 38, while requiring the contractor in the contract to perform the work according to the specifications of the city engineer, having produced a conflict and irregularity in the proceeding, which resulted in releasing the abutting property owner from

Terrell v. City of Paducah, &c.

liability, the burden of this mistake should now be imposed upon the city, in order to do complete justice to all the parties to the action. (Section 3458, Ky. Stats.; City of Louisville v. Selvage, 21 Ky. Law Rep., 349; City of Louisville v. Clark, 20 Ky. Law Rep., 1265; cases above cited.)

3. Where the authority to make the improvement is within the scope of its corporate powers, as defined in its charter, and the ordinance or contract is defective in the method of its execution, or invalid or illegal, because of any irregularity or informality, in the exercise of powers possessed by the city, it is estopped from pleading the same in justification of its unwarranted and unauthorized act. And, where such is the case, the contractor is not required, at his peril, to take notice thereof, for this is true only where the unwarranted act of the city is beyond the scope of its charter powers. (Ingersoll on Public Corporations, section 96, etc.; Elliott on Roads and Streets, sections 500-503, and authorities therein referred to.

(No brief for appellee in the record).

OPINION OF THE COURT BY JUDGE O'REAR.—Reversing.

On July 17, 1899, the city council of Paducah adopted the following ordinance:

"Section 1. That Washington street be improved by grading and graveling the same from First street to low-water mark at river in accordance with ordinances Nos. 38 and 39 of the Revised Ordinances of the city of Paducah, and charter of cities of the third class governing such improvements.

"Sec. 2. Said grading and graveling shall be done at the exclusive cost of the owners of ground fronting on Washington street between First street and low-water mark; the city of Paducah to be liable for no part of the cost of such improvements, except at the intersection of streets and public alleys; the said improvements to be completed by the 1st day of December, 1899."

Section 38, above referred to, provided, among other things, as follows:

"Section 1. That a street in the city of Paducah shall, when improved, consist of a sidewalk on either side, a gutter next thereto, and the center or street proper.

"Sec. 2. On streets sixty-six feet in width, the sidewalk on each side shall be twelve feet wide, the gutters three feet wide, and the street proper of gravel thirty-six feet wide."

Washington street was 66 feet wide. Advertisement was made for bids for the work in accordance with the provisions of the ordinance and the profile plans and specification on file in the city clerk's office. The specifications provided that the subway should be 66 feet wide, and, when it was accepted by the engineer, gravel to the depth of 12 inches should be spread uniformly over the whole surface and thoroughly compacted by rolling or tamping. Ed C. Terrell was the best bidder, and his bid being accepted the following written contract was entered into:

"Contract for the Improvement of Washington street from First street to Tennessee river, between Ed C. Terrell, contractor, and the city of Paducah.

"This contract, made and entered into by and between E. C. Terrell, as party of the first part, and the city of Paducah, Kentucky, as party of the second part, witnesseth:

"That whereas, the party of the first part has been awarded the contract by the party of the second part for the improvement of Washington street, from First street to the river, in accordance with an ordinance passed for that purpose, the said party of the

first part does hereby agree and contract that he will faithfully do and perform all the things required by said ordinance, in and about the improvement of the said street and in accordance with the plans and specifications and profile in the council clerk's office of the city of Paducah, and that he will do the said work in a good and acceptable manner as required by said ordinance, and finish the same by the time as stipulated in said ordinance, for the compensation of $1.60 per lineal foot.

"The said city of Paducah agrees to pay the said amount for the said improvement as required by law for all intersections, and to do all other things required by law for the faithful execution of the said work.

"Ed C. Terrell,

"Party of the First Part.

"Dated this 5th day of September, 1899.

"City of Paducah,

"Party of the Second Part.

"Attest: W. H. Patterson, C. C. P.

"James M. Lang, Mayor."

At a meeting of the council on September 5th the following order was made:

"The mayor stated that E. C. Terrell being the lowest and most advantageous bidder he had awarded him the contract for the improvement of Washington street from First street to the river at $1.60 per lineal foot, on each side, and he offered as his sureties R. C. and A. S. Terrell. Contract ratified and sureties approved upon a call of the yeas and nays by the following votes: Clark, Davis, Elliott, Ezell, Fowler, Jackson, Johnson, Jones, Robertson, Smith, Winstead and Yeiser."

Terrell built the street, as required by his contract and the specifications, 66 feet wide. The work was accepted by the city authorities, and their action being reported, the following was adopted: "Resolved by the city council that said work be received and accepted as done in accordance with the contract and that the estimates be placed in the hands of the contractor for collection, and he be allowed $99.20, the amount due him by the city for intersections as shown by the engineer's apportionment." Terrell then began this action against the property owners fronting on the improvement to enforce a lien on the property for the cost. The city was also made a defendant to the action, and judgment was prayed against it if the property owners were not liable. The property owners resisted a recovery on two grounds, viz.: (1) That the way to be improved was a public wharf, and not a street; and (2) that, by ordinance 38, only 36 feet of the street could be improved as a carriage way, and t at, as the ordinance directing the improvement provided that the work was to be done in accordance with ordinance 38, it necessarily provided only for the improvement of 36 feet of the street. The circuit court sustained this last defense, giving Terrell judgment against the property owners for only this part of his work, and refusing to give him judgment against the city for the remainder of his claim. From the judgment in favor of the city, he appeals. The p   rty holders do not appeal. The reasons of the circuit court for the conclusion are that the ordinance authorized only 36 feet of the street to be graded and graveled; that the council knew what the ordinance meant; that the contractor was required to know at his peril the infirmity in the contract and

the ordinance; and that the city was not liable because its council passed a defective ordinance under which payment for the work could not be coerced from the abutting landowners.

It seems to us that the case comes to this: Either that the city is not liable, because of the terms of the ordinance authorizing the work, and of the terms of the contract made in pursuance to it; or that the city is liable, notwithstanding the terms of the contract, on the ground that the court will presume that the contract meant that the city was not to be bound only in the event that it had authority to bind and had bound the abutting property for the cost of the improvement. The latter proposition is not new to the judicial history of this State, and is not novel to the courts. There are many cases, beginning with Louisville v. Hyatt, 5 B. Mon., 199, and extending to Asphalt Co. v. Gaar, 115 Ky., 334; 24 Ky. Law Rep., 2227; 73 S. W., 1106, which held that, under such circumstances, the city is liable, although it by contract provided against liability. It is not deemed necessary to restate the grounds and reasoning upon which the cases rest. They are believed to be sound. In addition, the strongest reason for the application of the rule of stare decisis applies here, as they constitute a rule of property, upon the faith of which it is fair to assume similar contracts have been entered into, and rights attached under them, which it would be unjustifiable to disturb on a mere doubt, by adopting a different construction. The question is: Does this case come within the rule. In its examination we well meet with cases apparently in conflict with the rule, notably Craycraft v. Selvage, 10 Bush, 705. But that case and others similar rest

upon the peculiar phraseology of the statutes, which were charters of the towns, and from which the authority to make the particular contracts were derived. It is not proposed by anything here said to conflict with Craycraft v. Selvage. It may be conceded that where a city is authorized to cause a street to be laid out or improved at the exclusive cost of the abutting property, and the charter of the city provides that in such case the city shall not be liable for the cost of the improvement, but that the contractor shall look alone to his lien upon the abutting property, that the city will not be liable if, by error of its council or other officers, it failed to take proper steps to secure a lien upon the property abutting the improvement for the benefit of the contractor; still, it remains to be seen whether this case falls within that rule.

Charters of all third-class cities, to which appellee belonged when this contract was made, provide: "The common council shall have power to cause to be graded, constructed, reconstructed, paved, or otherwise improved and repaired, all streets, sidewalks, alleys and public ways, or parts thereof, within the city, of such material and in such manner and under such regulation as shall be provided by ordinance, and may, in their discretion, provide for the payment of the cost of same, or any part thereof, out of the city treasury: Provided, the ordinances and contracts for such work shall specify how the work shall be paid for." Section 3457, Ky. Stats. 1903. It is thought by some that the proviso in this section is a limitation upon the power of the city to bind itself for street improvements; that, to do so, the ordinance must expressly show how the

work shall be paid for, or the power to have the work done at all at the city's expense is withheld. This calls for an interpretation of section 3457, supra. The power to grade and improve its streets by a city is an inherent corporate power. The section did not therefore, confer the power, but it was included in the general grant to the corporation to be a city. This point is material in determining whether the clause following the word "provided" is mandatory, or directory, for, if it is mandatory, and is in fact a limitation upon the power granted, its nonobservance would be fatal to the attempted exercise of the power. If, on the other hand, it is directory only, then, although it should still be observed by the city council, if it is not observed the failure would not defeat the exercise of the power, particularly after the work has been done under it in good faith.

Sutherland on Statutory Construction, section 454, lays it down that: "When a statute is passed authorizing a proceeding which was not allowed by the general law before, and directing the mode in which an act shall be done, the mode pointed out must be strictly pursued. It is the condition alone on which a party can entitle himself to the benefit of the statute, that its directions shall be strictly complied with. Otherwise the steps taken would be void. But when the proceeding is permitted by the general law, and an act of the Legislature directs a particular form and manner in which it shall be conducted, then it will depend on the terms of the act itself whether it shall be considered merely directory. * * * Where a statute, in granting a new power, prescribes how it shall be exercised, it can lawfully be exercised

in no other way. Negative words in granting power
or jurisdiction cannot be directory.'' The same
author says: ''Where the provision is in affirmative
words, and there are no negative words, and it relates
to the time and manner of doing the acts which con-
stitute the chief purpose of the law, or those
incidental or subsidiary thereto, by an official person,
the provision has usually been treated as directory.''
Id. section 443.

Unless the word ''provided'' itself implies a
limitation on what has preceded, we find in this clause
of the statute no negative word. It directs the form
of the ordinance and contract. It is not a statute
aimed primarily to protect the city treasury, but it
is intended to provide a system of public thorough-
fares for the city, and incidentally to pay for them by
a direct tax upon the abutting property, as provided
in section 3449 et seq., Ky. Stats., 1903, or by an
appropriation out of the general levy. The word
''provided,'' as used in statutes, generally, though
not always, implies a limitation or restriction upon
what has preceded in the context. Sutherland says
(Sutherland on Stat. Const., section 222) : ''Provisos
and exceptions are similar, intended to restrain the
enacting clause, to except something which would
otherwise be in it, or in some manner to modify it.''
But this is not always necessarily so. The word may,
if such be the sense gathered from the whole act or
instrument, simply explain what had previously been
stated in general terms, or direct the manner of doing
what was allowed by the context to be done generally.
Rich v. Atwater, 16 Conn. 419; Forscht v. Green, 53
Pa. 140; Co. Litt., 146 B.; Stanley v. Colt, 5 Wall.

(U. S.) 166, 18 L. Ed. 502; Chapin v. Harris 8 Allen (Mass.) 596.

Section 3457, Ky. Stats., 1903, is a part of the sub-division of charters of cities of the third class, devoted to "streets and alleys." For these cities a dual system of improvement is allowed. One is by a direct assessment of the cost upon the abutting property. The other is at the city's expense. The latter, as we have seen, was included in the inherent corporate powers of the city. But the former did not naturally exist, and could not be exercised unless specifically granted by the Legislature. Dillon on Municipal Corporations, 605; Kniper v. City of Louisville, 7 Bush, 599; Caldwell v. Rupert, 10 Bush, 179. The proviso contained in section 3457, Ky. Stats. 1903, logically applies to the whole system, and because there is a dual system. It is to keep the accounts straight. By its observance there is less apt to be confusion or uncertainty in assessing the cost of improvements. If it applied alone to the city's contracts where it undertook to have the improvements done at its own expense, it would have been a meaningless term and useless, for there is but one way for a city to pay for its own work, and that is out of the money in its treasury, or, which is the same thing, out of the money it may raise by general taxation and put into its treasury. We conclude that the term, as used in this statute, is directory, and is not a limitation upon the power of a city to improve its streets. Nor are we lacking in precedent in this State for this construction. In Kearney v. City of Covington, 1 Metc. 339, the charter of the city authorized it to direct street improvements at the expense of the abutting property holders, or to pay for them out of

the city treasury. The section of the charter there
in question concluded with the proviso that the city
council should, by a vote of two-thirds, have the
power to pay for the grading of the streets out of the
city treasury. Of this the court said: "The object
or meaning of this proviso is not very clear or certain.
It does not require a vote of two-thirds of the city
council to authorize a contract to be made for the
grading of the streets, where it is intended to make
the city responsible, but only requires a vote of two-
thirds to pay for the grading out of the city treasury.
It may have been intended to confer a power, but it
was certainly not intended to limit the exercise of a
power necessarily incident to such a corporation. It
is the duty of the city authorities to keep the streets
in proper repair; and if, as argued, this provision in
the charter was intended to restrict them to the mere
grading of the streets, and to preclude them from
having any further improvements made at the public
expense, it would conflict with the general law which
requires them not only to put, but to keep, the streets
in good repair. Such a construction should not, there-
fore, be given to it, but it should be construed to
relate exclusively to the action of the city council in
directing the payment to be made after the work has
been done." In other words, the proviso was held to
be directory of the manner of doing a thing already
allowed by general law to be done.

So far the case has been considered upon the theory
that Washington street improved under the ordinance
in this case was a public street. Before the improve-
ment it was an open way, extending from the edge
of First street—which was near the top of the bank
of the Tennessee river—down the bank to low water

mark of that river, a distance of about 300 feet. The way was not improved upon any plan of streets, but appears to have been intended for use as a wharf. During high water in the river much of this improved way would be under water, and at times all of it would be. It was in reality the grading and graveling for 66 feet wide, the bank of Tennessee river between high and low water mark. The court takes judicial notice that the Tennessee river is a navigable river, and as such the rights of the public extend to ordinary high-water mark. Gould on Waters, section 42. As the public right in the land forming the bank of the river between high and low water mark was paramount to the rights of the owner of the adjacent fee which called to extend to the river, an improvement of a way for the public across their own property ought not, and under the charter of appellee city cannot, be made at the expense of the abutting property holders; that is, the servient owners. Some part of these lots, it is true, was above the top of the bank, but as they were compelled by the judgment to pay something more than one-half of the cost of the improvement, it is fair to assume that the remainder represents no more than what they could not have been compelled to pay for. This being so, the case comes within the rule first laid down, viz.: The city has attempted to bind by ordinance and contract for a street improvement, property which it could not bind therefor under its charter; for which, under all the cases, the city is liable, even though its ordinance and the contract expressly say it is not liable, provided it was a contract that the city had the power to bind itself on. . City of Louisville v. Hyatt, 5 B. Mon. 199; Kearney v. City of Covington, 1 Metc. 339;

Caldwell v. Rupert, 10 Bush 179; Craycraft v. Selvage, 10 Bush, 696.

The charter of third-class cities provides further: "That on the trial in equity of any case relating to the improvement of any street, alley, sidewalk, or other public highway, or any part thereof, the court trying the case shall have the right to correct any mistake or error of the city engineer's in estimating and apportioning the cost of such improvement among lot owners, or any mistake or error of the common council relating to such improvement so as to do complete justice to all parties." Ky. Stats. 1903, section 3458. This section follows sections 3449-3457, which allows streets to be improved at the cost either of the city or the owners of the abutting property. By its terms the section deals with two classes of errors which the courts are authorized to correct. One is any error or mistake of the city engineer in estimating and apportioning the cost of such improvement among the lot owners. The other is "any mistake or error of the common council relating to such improvement." The end in either instance which the statute expressly declares is "so as to do complete justice to all parties." Now, towns and cities can contract only through their councils or trustees. The contract, to bind the city, must be concerning a matter which the council had the power to make, and it must be entered into pursuant to an ordinance of the town duly enacted. The Legislature contemplated that in the attempted exercise of vested power the city, by inadvertence of some public official, might do or fail to do something, which, strictly construed, would avoid the contract, so that the other party to it would have no recourse, and would lose

his labor and material, which, from the nature of such an improvement, would inure to the city's full use, just as though they had in fact been paid for.   The injustice of such a result was manifest to the Legis-lature, as it is to anybody, and it was intended by section 3458, supra, to obviate it.   So the Legislature has, by that section, placed the parties to such a con-tract exactly in the position they would have occupied had it been a contract between two competent individ-uals under similar circumstances; that is, to allow a court of equity to do complete justice between them when from mistake the contract has been performed by one party, and cannot be specifically executed by the other.

This might involve more than the mere correction of an engineer's mistake.   Where the ordinance duly adopted shows the determination of the town council to make the improvement, which is one which it is empowered by law to make, and where, in the attempted exercise of that power and determination, the parties have failed to state some part of the undertaking, or omitted to set out an obligation which the necessity of the case would seem to imply as an incident of that which was expressly undertaken by the parties, it is just that the real object intended should not fail because of such inadvertence.   It could not have been in the minds of the parties that one of them was to do work for and furnish material to the other of great value, and get nothing for it.   The contract, and the whole proceeding, negatives such thought.   On the contrary, it is clear that both parties intended that the work was to be paid for at the stip-ulated price; that it was for the town, which, as a corporation, got the benefit of it; and that the town

intended to pay for it. In execution of this last feature of the contract the town undertook to adopt a method which it had the right as a privilege to adopt, of charging the cost to the abutting property, instead of to all property within the corporation. But upon this point—that is, the right of the town to pay for the work in this way—both the town and the contractor were in error in the assumption that it could be legally done. Now, after the work has been done for the town, in accordance with its specifications, and has been accepted by it, so that it is impossible to place the other party in statue quo, the parties discern that they were in error in assuming that the abutting property could be charged with the cost. The Legislature has justly provided that in such case a court of equity may correct the mutual mistake of the parties and decree justice between them, which is to compel the town to pay in the other way, and in this case the only legal way open to it, for that which it has ordered to be done and has got the full benefit of. Nor is this the exercise by the court of a legislative function which the council must alone exercise. The correction of an error in a contract by a court of equity is not the making of a contract. It is merely the reforming of the contract the parties have already made, so as to conform it to the facts and the law. If a contract already performed by one party contain erroneous provisions, or omits provisions that should, under the agreement, have been incorporated in it, or if it contain impossible conditions, courts of equity may nevertheless do justice by substituting the law's implication for the impossible provisions, as well as reform the contract in accordance with the real understanding between the

Terrell v. City of Paducah, &c.

parties. This is an ancient practice and prerogative of courts of equity, who have no more power to make contracts between individuals than to make contracts on behalf of municipal corporations. The parties had the power to contract with reference to the subject-matter. They have contracted. Their minds have met as to what was to be done by appellant, and the price he was to receive for it. They have by mutual mistake provided that he was to be paid in a way that, as subsequently developed, was impossible of execution. Now, after the work is done and has been received, for a court of equity to decree that the same payment shall be made in another way which is possible and legal is in no sense the making of a contract, or the exercise of a legislative function.

We conclude that upon the whole case the judgment in favor of the city is erroneous, and it is therefore reversed, and the cause remanded, that judgment may be entered in favor of appellant as herein indicated.