CASE 78—AGREED CASE—JUNE 19.

# City of Covington v. McKenna.

APPEAL FROM KENTON CIRCUIT COURT.

1. MUNICIPAL INDEBTEDNESS—BOND ISSUE—CONSTITUTIONAL CONSTRUCTION.—Under the provisions of section 3101 of the Kentucky Statutes, authorizing certain street improvements in cities of the second class, which are to be paid for by the abutting property owners, and wherein the property owner is given the option either to pay in cash or in ten annual payments, and authorizing, in order to provide for the immediate payment of the cost of improvement where the property-owners elect to pay on the ten year plan, the borrowing of money and the issual of bonds therefor, "pledging the faith and credit of the city for the payment of the principal and interest thereof," the bonds to be in ten series, maturing annually through the ten year period, if the issue of the bonds will cause the city to become indebted to an amount exceeding in any year the income and revenue provided for such year, the question as to whether they shall be issued must be submitted to a vote of the people and receive the assent of two-thirds of them at an election to be held for that purpose; and this must be done, although the bond issue is to be "in anticipation of the collection of a special assessment for such improvement . .·. from such property holders."

W. Mc. D. SHAW FOR APPELLANT.

1. The faith and credit of the city of Covington is pledged for the payment of the bonds and interest, and although the fund arising from the special assessment is also so pledged, it is, nevertheless, "an indebtedness" of the city, and being greater than the current revenue for the year, the question of issuing the bonds, must be submitted to a vote of the people.    (Secs. 3073 and 3101, Ky. Stats.; Unites States v. Fort Scott, 99 U. S., 152; Hitchcock v. Galveston, 96 U. S., 347.)

C. B. SIMRALL FOR APPELLEE.

City of Covington v. McKenna.

1. The agreed facts show that the city of Covington, a city of the second class, had an indebtedness at the time of the adoption of the Constitution exceeding ten per centum of the assessed value of its taxable property; and it is, therefore, empowered under the provisions of section 158 of the Constitution to increase its indebtedness two per centum.

3. The agreed facts show that the payment for these improvement bonds, both principal and interest, will be provided for and paid from a special tax levied under the provisions of the law upon property abutting on the improved streets, and that no general tax will be required to pay either principal or interest of the bonds.

3. While it is true the city must submit to the voters the question as to whether a debt that is to be paid by general taxation shall or shall not be incurred, yet it can not be that the city, before it can construct a street, for a block or a part of a block, in the manner authorized by its charter, must submit the question of construction to a vote of the people.  (Hitchcock v. City of Galveston, 96 U. S., 341.)

JUDGE Du RELLE DELIVERED THE OPINION OF THE COURT.

This is an agreed submission of a question for decision.

By section 158 of the Constitution it is provided that cities of the second class, to which appellant belongs, shall not be permitted to incur indebtedness to an amount, including the then existing indebtedness, in the aggregate exceeding ten *per centum* on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness.

After providing for indebtedness authorized      laws in force prior to the adoption of the Constitution, and for the completion of public improvements undertaken prior thereto, this section further provides that "if, at the adoption of the Constitution, the aggregate indebtedness of the municipality, including that which it is authorized by this section to contract, shall exceed the prescribed limit, then it shall not be permitted to increase its indebtedness in an amount ex-

ceeding two per cent. in the aggregate upon the value of the taxable property therein until the aggregate of its indebtedness shall have been reduced below the limit fixed, and thereafter it shall not exceed the limit, except in case of emergency."

By section 3096, Kentucky Statutes, cities of the second class are authorized to improve streets by original construction, at the cost of abutting property holders, upon the petition of the holders of a given proportion of such property, and by section 3101 such improvement may be paid for on the ten year plan, the owner of the abutting property having the option to pay in cash or in ten annual payments. To provide for the immediate payment of the proportion of the cost of the improvement assessed against those property holders who elect to pay on the ten-year plan, the city is authorized to borrow the money and issue bonds therefor, "pledging the faith and credit of the city for the payment of the principal and interest thereof," the bonds to be in ten series, maturing annually through the ten-year period.

It is provided that the bond issue thus authorized is to be "in anticipation of the collection of a special tax or assessment for such improvement or re-improvement from such property holders;" that the property shall be in lien for the assessment until it is paid; and in the succeeding section, that no local assessment for street improvement shall exceed one-half of the value of the property assessed.

Under these statutory provisions an ordinance was passed providing for the issue and sale of bonds of the city, and providing a fund for the payment of the improvement of Twentieth street with brick pavement.

By the agreed statement of facts it appears that all the statutory prerequisites to the bond issue had been regularly

performed—by the petition of the property owners, the passage of the ordinance in accordance with the charter provisions, advertisements for bids, contract for the improvement, etc.

It further appears that no general tax levy will be necessary to pay the bonds if issued, but that they will be paid by the tax levied and assessed upon the property abutting on the improvement; that at the time of the adoption of the present Constitution the debt of the city was fourteen per cent. of the assessed value of the property therein, and has never since that adoption reached two per cent. of the assessed value, in addition to the percentage which existed at the time of the adoption, or of any subsequent valuation thereof.

The assessed value of property in the city in 1891, when the Constitution was adopted, was $17,470,965, and the city debt was $2,444,300, or about fourteen per cent. of the assessed value. An addition of two per cent., or $349,419.30, would make a total of $2,793,719.30, the maximum which the city can incur until the assessed value shall so increase that ten per cent. of it will be greater than its indebtedness. It is agreed that the debt of the city has never reached that figure, though the assessment has increased in amount.

Upon this state of facts the court below held, first, that section 158 of the Constitution does not prevent the issue of the $6,000 of bonds provided for by the ordinance, and in this conclusion we concur; and, second, that neither section 157 of the Constitution nor section 3073 of the Kentucky Statutes required the assent of two-thirds of the voters of the city before the bonds could be issued.

The latter conclusion was reached upon the theory that "the amount of the debt incurred and maturing each year will be met by the special tax and will not exceed the city

income or revenue provided for that year;" and that, therefore, the assent of two-thirds of the voters is not required by section 157 of the Constitution.

Section 3073, Kentucky Statutes, permits the additional two *per centum* indebtedness allowed by the Constitution (section 158) to cities of the second class, which had already a ten *per centum* debt at the adoption of the Constitution, provided the assent of two-thirds of the voters, voting at an election, etc., be obtained. It provides further for the issue of bonds for such increased indebtedness, and for the levy of an annual tax to pay the interest and create a sinking fund for the payment of the principal; and the tax thus provided for is evidently a general one, to be levied on all the taxable property of the city .

It is very plausibly argued that as this section provides for a general indebtedness, which will be a charge upon all the taxable property of the city, it can have no application to the street improvement bonds provided for by section 3101, which are intended to be paid out of the sums realized from the assessment upon the abutting property. It is unnecessary, however, to pass upon this question.

The main question remaining is whether, under section 157 of the Constitution, the issue of the bonds in question will cause the city to become indebted to an amount exceeding, in any year, the income and revenue provided for such year.

It is claimed for the appellee that the amount of the debt incurred and maturing each year will be met by the special tax, and will not exceed the city income provided for that year. This is clearly erroneous. If it is a debt of the city it is incurred in the year in which the bonds are issued, though

it does not then mature.   It is an anticipation of the income of future years.

In Beard v. Hopkinsville (which with extensive annotations is given in 23 L. R. A., 403) this court held that a contract by a city to pay an annual rental for the use of water hydrants and electric lights is a contracting of indebtedness within the meaning of section 158 of the Constitution; but it is contended that because the bonds are to be paid out of the assessments, which are a lien upon the property abutting on the improvement, they are, therefore, not an indebtedness of the city; and that, as the obligation is a current one, to be paid out of the current revenue of each year, as the installments fall due, such disposition and appropriation of future revenue to meet and discharge an obligation which is but a contingent one, and is to mature in the future at the time at which the provision is made to meet it, is not the creation of an indebtedness within the meaning of the Constitution.

It must be remembered that the statute under consideration (section 3101), while it provides for a special assessment to meet the bonds, provides also for "pledging the faith and credit of the city for the payment of the principal and interest thereof;" and, though it is required in section 3102 that no local assessment for street improvement shall exceed one-half the value of the property assessed, values may fall, and the amount realized from the sale of the land assessed may be inadequate to pay the bonds, to say nothing of the assessments proving uncollectible.

As said in the case of Beard v. Hopkinsville, *supra*, . . . "if the words used in the Constitution are to be given their usual and commonly accepted meaning, by the contract in question the city does 'incur an indebtedness' in the sense

these terms are used in the Constitution, and that this indebtedness is in excess of the limitation imposed is apparent."

So in Springfield v. Edwards, 84 Ill., 626, in discussing a similar constitutional provision, the court said: "The prohibition is against becoming indebted—that is, voluntarily incurring a legal liability to pay in any manner or for any purpose—when a given amount of indebtedness has previously been incurred. It could hardly be probable that any two individuals of average intelligence could understand this language differently. It is clear and precise, and there is no reason to believe the convention did not intend what the words convey. A debt payable in the future is obviously no less a debt than if payable presently; and a debt payable upon a contingency, as upon the happening of some event, such as the rendering of service or the delivery of property, etc., is some kind of a debt, and therefore, within the prohibition."

In United States v. Fort Scott, 99 U. S., 152, under a statute very similar to the one in question providing for local improvement bonds upon a three-year plan, and that "for the payment of said bonds assessments shall be made each year," etc., the court said: "That the bonds for the amount for which the relator obtained judgment constitute a 'debt' or a portion of 'the bonded indebtedness' of the city, within the meaning of the statute, can not well be doubted;" and this, though the ordinance under which the bonds were issued provided that they should "be paid, principal and interest, solely from the special assessments," etc. (Culbertson v. Fulton, 127 Ill., 30; Law v. People, 87 Ill., 385; Prince v. Quincy, 105 Ill., 138, and 44 Am. Rep., 785.)

We, therefore, conclude that the bonds proposed to be

issued would create an indebtedness, and, being an appro-
priation of the income of future years, it would be to an
amount exceeding the income provided for the year in which
they might be issued, within the meaning of section 157 of
the Constitution, and must, therefore, be submitted to the
vote of the people.

Wherefore, the judgment is reversed and the cause re-
manded for further proceedings consistent with this opinion.