## Fowler v. City of Oakdale.

(Decided April 29, 1914.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Municipal Corporations—City of Fifth Class—Notice of Election To Create Indebtedness—How Published.—As Section 3637, subsection 3, Kentucky Statutes, providing for the holding of an election in cities of the fifth class, with respect to creating an indebtedness by the issue of bonds, declares notice thereof "shall be published for at least two weeks in some newspaper published in or of general circulation in such town, or by posting written or printed notices at three or more public places in such town," the council of such city may, under the discretion conferred by this provision, give the notice of such election either by publishing it in a newspaper of the character described, or by posting written or printed notices thereof at three or more public places in such town.

2. Municipal Corporations—Election in a Fifth Class City as to Incurring Indebtedness—Vote Required To Authorize Incurring Indebtedness.—In order to authorize a city of the fifth class to incur the indebtedness contemplated by Section 157, Constitution,

and Section 3637, subsection 3, Kentucky Statutes, it is necessary that two-thirds of the electors whose votes are cast on the question of incurring the indebtedness, shall vote in approval thereof.

3. Municipal Corporations—Tax for Paying Interest on Bonds of City of Fifth Class, and to Provide a Sinking Fund for Their Redemption—When To Be Levied.—The levy of a tax to pay the first year's annual interest on the bonds of a city of the fifth class, and to provide such year's proportion of a sinking fund for their redemption, may be made by its council at any time before the issue and sale of the bonds; but a levy of such tax for any subsequent year for such purposes must be made by the council at the time at which taxes imposed by the city for other purposes are levied.

W. S. SANFORD for appellant.

CHAPEZE & CRAWFORD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, J. W. Fowler, a resident, citizen and tax payer of the city of Oakdale, Jefferson County, by this action sought to enjoin the issuance and sale, by its mayor and Board of Councilmen, of $25,000.00 of bonds, the proceeds of which are to be used in constructing sewers in that city. Oakdale is an incorporated city of the fifth class. The bonds are fifty in number, for the principal sum of $500.00 each, bearing five per cent interest from March 1, 1914, until paid, and payable semi-annually, according to the terms of the coupons attached to each bond. All the bonds mature twenty years from March 1, 1914.

The question whether the indebtedness evidenced by these bonds should be incurred and bonds issued by the city of Oakdale was, by proper ordinance, duly passed by its Board of Councilmen, submitted to an election by the qualified voters thereof, held November 4, 1913, at which election 196 votes were cast in favor of incurring such indebtedness and 32 cast against it. The grounds alleged in the petition against the right of the city of Oakdale to issue or sell the bonds in question were as follows: 1. That the publication of the ordinance submitting the question of incurring the indebtedness and issuing the bonds to the voters of Oakdale for their approval or rejection was improperly made; such publication and the calling of the election having been by typewritten notices posted in three or

more public places in the city instead of in a newspaper published or of general circulation therein; 2. That the persons voting at the election in favor of incurring the indebtedness and issuing the bonds were less than two-thirds of all the qualified voters in the city; 3. That the levy of the tax to provide for the payment of interest on the bonds and a sinking fund for the redemption of the bonds, was not made at the time or in the manner required by law; 4. That the ordinances calling the election, making the tax levy and directing the issuance of the bonds, do not, as to their enacting clauses, comply with section 3638, Kentucky Statutes.

The city of Oakdale filed a demurrer to the petition, as amended, which was sustained by the circuit court, the injunction refused and the petition dismissed; and from the judgment manifesting these rulings this appeal is prosecuted.

It is not claimed by the appellant that the ordinance requiring the holding of the election fails to specify the amount of the indebtedness proposed to be incurred, the purpose of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund. On the contrary, it is admitted that in these particulars the ordinance conforms to section 3637, sub-section 3, Kentucky Statutes, which provides for the holding of such an election and the manner of conducting same. The complaint is that notice of the ordinance and election to be held thereunder was not published for at least two weeks in some newspaper published, or of general circulation, in the city, but admitted that such publication was made by three typewritten notices posted at public places within the corporate limits of the city of Oakdale for more than two weeks before the election. The statute, section 3637, sub-section 3, provides:

"Such notice shall be published for at least two weeks in some newspaper published in or of general circulation in such town, or by posting written or printed notices at three or more public places in such town."

The publication admittedly made by posting typewritten notices at three or more public places in the city, was sufficient. As the statute delegates to the discretion of the Board of Councilmen of cities of the fifth class authority to publish such a notice either in some newspaper published in or of general circulation in the town, *or* by posting written or printed notices at three

or more places in such town, in the exercise of the discretion thus conferred the council had the right to make the publication in either manner allowed; consequently it acted according to law and no one has the legal right to complain. It is also admitted that there was no newspaper published in the city of Oakdale, although newspapers of the adjacent city of Louisville have a general circulation therein. This admission, however, is not material, for the council, even if there had been a newspaper published in the city of Oakdale, had the right to make the publication as was done.

The second contention has been too frequently overruled by us to require an extended discussion of it here. In brief, it is the meaning of section 157 of the Constitution, as well as of section 3637, sub-section 3, Ky. Stats., that the assent of two-thirds of the electors whose votes are cast on the question of incurring the indebtedness, is all that is necessary. As said in Board of Education of Winchester v. City of Winchester, 120 Ky. 594:

"Every provision of the Constitution is mandatory. When it is provided that an indebtedness to a certain amount shall not be incurred without the assent of two-thirds of the electors voting at an election to be held for that purpose, it necessarily follows from the Constitutional provision that such an indebtedness may be incurred with the assent of two-thirds of the voters. The legislature can neither subtract from nor add to the Constitutional requirement. The constitutional provision regulates the subject and removes it from legislative control." Cooley, Constitutional Limitations, page 64.

In Render v. City of Louisville, 142 Ky. 409, we said, in commenting upon the provisions of the Constitution in question, and the discussion of it in the opinion of the case, *supra*:

"It is proper to add in this connection that we also held in the case, *supra,* that the meaning of section 157 of the Constitution is, that the assent of two-thirds of the electors whose votes are cast on the question of incurring the indebtedness, is all that is necessary; otherwise the section of the Constitution, *supra,* would have required the legislature to indicate by statutory enactment some means of ascertaining the entire number of legal voters in the municipality. (Montgomery County

Court v. Trimble, 104 Ky., 629; Tipton, etc., v. City of Shelbyville, etc., 32 R. 1123).''

It appears from the petition that there were 228 votes cast on the question whether the indebtedness of $25,000.00 should be incurred for the construction of sewers in the city of Oakdale and an issue of bonds made therefor. Of these, 196 votes were cast for the proposition and 32 against it. Thus it will be seen that not only two-thirds, but about eighty-five per cent of the voters, voting upon the question, gave their assent to the proposition, which met the requirements of the Constitution and the statute. It is claimed, however, that as at the time this election was held there was also held an election for mayor and members of the council of the city of Oakdale, in which election 438 votes were cast, this fact makes it apparent that but little more than half of the entire vote of the city of Oakdale was cast in the election involving the question of incurring the indebtedness. The fact that a much larger vote was cast in the election for city officers is not material. Our inquiry into the election need go no further than to determine whether two-thirds of the voters voting upon the question of incurring the indebtedness, voted in favor of the proposition; and that this was done is admitted.

The third contention must likewise be overruled. It rests upon the theory that as the tax of 22 cents on each $100.00 worth of taxable property in the city fixed by the council for paying the annual interest on the bonds and providing a sinking fund for their redemption at their maturity, was not levied or apportioned at the time of the levy of taxes by the council for running the city government, this made the levy invalid and gave cause for enjoining the issuance and sale of the bonds. The statutes, section 3637, sub-section 3, provides:

''If, upon a canvass of the votes cast at such election, it appears that two-thirds of all the qualified electors in such town shall have voted in favor of incurring such indebtedness, it shall be the duty of the city council to pass an ordinance providing for the creating of such indebtedness, and of paying the same; and in such ordinances provisions shall be made for the levy and collection of an annual tax upon all real and personal property subject to taxation within such town, sufficient to pay the interest on such indebtedness as it falls due;

and also to constitute a sinking fund for the payment of the principal thereof within a period of not more than twenty years from the time of contracting the same. It shall be the duty of the city council *in each year thereafter, at the time at which other taxes are levied,* to levy a tax sufficient for such purposes, in addition to the taxes by this chapter authorized to be levied. Such tax when collected shall be kept in the treasury as a separate fund, to be inviolably appropriated to the payment of the principal and interest of such indebtedness.''

It appears from the petition and exhibits filed therewith that the city council, by an ordinance passed in December, 1913, made a levy of a tax for paying all other expenses and indebtedness of the city, but did not then levy a tax or apportion from the levy then made any part of the tax for the purpose of providing for the payment of the interest upon the bonds in question and a sinking fund for their redemption at maturity. A levy for this purpose, or apportionment of the tax previously levied, was, however, made by the council at a regular meeting, and by an ordinance duly passed, in January, 1914, such tax being fixed at 22 cents on each $100.00 of taxable property in the city of Oakdale. We are unable to see that the validity of the last levy or apportionment was in any way affected by the failure of the council to make it at the time of the levy of other taxes for paying the current expenses of the city government and its other indebtedness. The original ordinance requiring the holding of the election for determining whether the indebtedness should be incurred, as well as the published notice of the time and manner of holding the election, specified the amount of the indebtedness to be incurred, the purpose of the same and the amount of money necessary to be annually raised by taxation for an interest and sinking fund to pay it. The required tax for paying such interest and creating a sinking fund to retire the bonds could not be levied until after it had been determined at the election whether the additional indebtedness should be incurred. This levy might have been made when the levy of taxes was made by the council in December, 1913, but the council was not then compelled to make it and could do so at any time before the bonds were issued, which was, in fact, the course pursued. It will be observed from the language of the statute, last above quoted, that it does not

impose upon the city council the duty to make the first levy of a tax for providing money to pay interest on the bonds and a sinking fund to retire them, at the time at which other taxes are levied for the city by it. The duty imposed upon the council of making the levy for the payment of interest on the bonds and providing a sinking fund to retire them, at the time at which other taxes are levied, applies to each year after the first levy of a tax is made to pay the interest on the bonds and create a sinking fund to retire them; therefore, the first levy of the tax for the payment of interest on the bonds and creating a sinking fund to retire them, can be made by the council either before or after the time at which other taxes for the same year are levied by it; and can, in fact, be made at any time after the council ascertains that the election has gone in favor of incurring the indebtedness and before the bonds representing such indebtedness are issued. Substantially this question was before us in Inglehart v. City of Dawson Springs, 143 Ky., 140, and we then held that although the initial ordinance providing for an election to vote an issue of bonds to construct a system of sewers did not provide for raising annually by taxation an amount necessary to pay the interest on the bonds and provide a sinking fund to retire them at maturity, the adoption of such an ordinance subsequent to the election and before the issue of the bonds was a substantial compliance with the law.

In the opinion it is said:

"In O'Brien v. City of Owensboro, 113 Ky. 680, a vote had been taken upon the question whether bonds should be issued by that city, but the ordinance providing an annual tax for the payment of the interest and the creation of a sinking fund for the ultimate extinction of the debt was not adopted by the city council until after the election; and we held in that case that the adoption of the ordinance subsequent to the election was sufficient, inasmuch as section 159 of the Constitution, under which the city derived the power to hold the election and issue the bonds, was self-executing and therefore the legislative authority conferred by section 3637, subsection 3, Statutes, *supra,* was unnecessary."

Section 159, Constitution, provides:

"Whenever any city, town, county, taxing district or other municipality is authorized to contract an in-

debtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same.''

Under this section of the organic law of the State it is obligatory upon the municipality creating an indebtedness which is authorized, to provide for the collection of an annual tax sufficient to pay the interest on such indebtedness, and to create a sinking fund for the payment of the principal thereof. This must be done at the time the indebtedness is created, and the word ''indebtedness'' as used in section 157, Constitution, refers to indebtedness created by contract. O'Brien v. City of Owensboro, 113 Ky., 680. In the instant case the indebtedness was not created until the city of Oakdale, by means of the election, obtained the assent thereto of two-thirds of its qualified voters voting on the question, and issued the bonds evidencing same; therefore, it was sufficient that its council at any time before issuing and selling the bonds provide for the collection of an annual tax sufficient to pay the interest on the bonds and to create a sinking fund for the payment of the principal thereof when due. In making all subsequent annual levies for this purpose, section 3637, sub-section 3, Kentucky Statutes, seems to make it the duty of the council to make the levy at the time at which other taxes are levied, and this it may do. But suppose it should refuse to do so at any time of levying other annual taxes? It could not be contended that such failure would affect the validity of the bonds, relieve the municipality of the payment of the interest thereon, or of the duty of providing a sinking fund for their ultimate retirement. In such a state of case the bondholders could resort to the remedy afforded by the writ of mandamus.

It further appears from the averments of the petition that the assessed value of all property, real and personal, in the city of Oakdale subject to taxation is $1,200,000.00, and that it will be necessary to raise by taxation each year the sum of $1,250.00 to pay the annual interest on the $25,000.00 of bonds; and $1,250.00 to create a sinking fund with which to redeem the bonds at the expiration of twenty years from their date; and as, in addition to the $2,500.00 thus to be appropriated, $6,000 will have to be raised in like manner annually to

pay all expenses of the city of Oakdale, and the amount collectible on $1,200,000.00 of property at a tax rate of 75 cents per hundred would create a fund of $9,000.00, after appropriating therefrom the $6,000,00 necessary to defray the expenses of the city government, there would be left a surplus of $3,000.000, only $2,500.00 of which would be required to provide for the payment of the annual interest of five per cent per annum on the bonds, and create the sinking fund with which they are to be redeemed at maturity.

It is not altogether clear from the averments of the petition that it will require as much as, or more than, the full rate of 75 cents on each $100.00 worth of the city's taxable property to raise the several amounts required for the purposes above enumerated; but we gather from the petition as a whole and copies of the ordinances filed as exhibits, that the levy of 22 cents specifically appropriated to the paying of the interest on the bonds and producing a sinking fund for their redemption, together with the levy to pay the expenses of the city government, will not altogether exceed 75 cents on each $100.00 of the city's taxable property. Assuming this to be the meaning of the petition, it would follow that the entire tax rate of the city will not exceed the Constitutional limit of indebtedness, which section 157 of that instrument declares shall not be more than 75 cents on each $100.00 for a city of the fifth class, to which Oaklale belongs.

Appellant's fourth contention is purely technical and, in our opinion, without merit. It is true that the language of the enacting clauses of the ordinances in question do not literally follow the form contained in section 3638, Kentucky Statutes, but every word required by the form set out in that section is found in the enacting clause of each of the ordinances. The position of the words are not the same, but, in meaning and arrangement, the form of the enacting clause of each ordinance and that of the statute is substantially the same, and this being true, it can properly be said that by the language actually employed in the enacting clauses of the ordinances the object of the statute has been accomplished.

The record furnishing no reason for declaring invalid the bonds which are to be issued and sold by the appellee city, the judgment is affirmed. Whole court sitting.