## Bernheim v. Town of Anchorage, et al.

(Decided May 29, 1914.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Municipal Corporations—Towns of Sixth Class—By Resolution May Determine Necessity for Incurring Indebtedness and Calling Election.—For the purpose of declaring the necessity of incurring an indebtedness of $25,000.00 and issuing bonds to that amount to establish a waterworks system, and calling an election to take the sense of the voters as to whether such indebtedness shall be incurred, the board of trustees of a town of the sixth class may act by resolution.

2.    Municipal Corporations—Action of Trustees in Actually Incurring
Indebtedness—How Taken.—In the matter of directing the issu-
ance of bonds and making a levy to provide a sinking fund for
paying the interest on the bonds and retiring them at maturity,
the action of the board of trustees must be had by the passage
of an ordinance.

ARTHUR M. RUTLEDGE for appellant.

HENRY BEDINGER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Jefferson
Circuit Court, Chancery Branch, Second Division, sus-
taining a general demurrer to and dismissing the appel-
lant's petition.    Appellant, a resident voter and tax-
payer of the town of Anchorage, instituted the action
against the municipality and its board of trustees to en-
join the issuance and sale by them of $25,000.00 of bonds
for obtaining a fund with which to install a system of
water works in the town; the bonds of $1,000.00 each to
mature twenty years after date and bear six per cent in-
terest from date, payable semi-annually.

Anchorage is a town of the sixth class, and at an elec-
tion held for the purpose of determining whether it
should incur the indebtedness of $25,000.00 represented
by the bonds there were 89 votes cast, 66 of which were
cast for and 23 against the proposition.    So more than
two-thirds of those voting on the question voted in favor
of incurring the indebtedness.    The petition attacked
the validity of the bond issue on the grounds: (1) That
the action of the board of trustees, in declaring it neces-
sary for the town to incur the indebtedness by issuing
the bonds in question and calling the election to de-
termine whether it should be incurred, was had by reso-
lution instead of by the passage of an ordinance; (2)
that the notice of the election did not specify the amount
of money necessary to be raised annually by taxation to
provide for paying the interest on the bonds and creating
a sinking fund for retiring them at maturity; (3) that the
notice calling for the election to determine whether the
indebtedness should be incurred did not specifically state
the amount of such indebtedness.

Section 3705, Kentucky Statutes, under which towns
of the sixth class obtain authority to incur an indebted-

ness greater than the revenue arising from the tax levy permitted by law, provides that:

"If at any time the board of trustees shall deem it necessary to incur any indebtedness, the payment of which can not be met by the levy authorized by law, they shall give notice of an election, by the qualified electors of the town, to be held to determine whether such indebtedness shall be incurred. Such notice shall specify the amount of the indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided. Such notice shall be published for at least two weeks in some newspaper published in, or of general circulation in, such town, or by posting written or printed notices at three or more public places in such town. If, upon a canvass of the votes cast at such election, it appears that two-thirds of all the qualified electors in such town shall have voted in favor of incurring such indebtedness, it shall be the duty of the board of trustees to pass an ordinance providing for the mode of creating such indebtedness, and of paying the same. And in such ordinances provision shall be made for the levy and collection of an annual tax upon all real and personal property subject to taxation within such town, sufficient to pay the interest on such indebtedness as it falls due; and also to constitute a sinking fund for the payment of the principal thereof, within a period of not more than twenty years from the time of contracting the same. It shall be the duty of the board of trustees in each year thereafter, at the time at which other taxes are levied, to levy a tax sufficient for such purpose, in addition to the taxes by this chapter authorized to be levied. Such tax, when collected, shall be kept in the treasury as a separate fund, to be inviolably appropriated to the payment of the principal and interest of such indebtedness."

Section 3704 confers upon the board of trustees of towns of the sixth class the power to "contract for supplying the town with water and light; to purchase, lease or receive such real estate and personal property as may be necessary and proper for municipal purposes, and control, dispose of and convey the same for the benefit of the said town."

It will be observed that section 3705, which confers upon the board of trustees the power to determine the

necessity for incurring such an indebtedness as is here contemplated and to give notice of an election to be held to determine whether such indebtedness shall be incurred, does not require that such action shall be taken by the passage of an ordinance; therefore, a resolution, duly passed by the board of trustees, declaring it necessary to incur the indebtedness and directing that notice be given of an election to be held to determine whether such an indebtedness should be incurred, as well manifests the action of the board of trustees as would an ordinance. The object of these provisions of section 3705 being merely to prevent the board of trustees from incurring any indebtedness in excess of the revenue for any year, without the consent of two-thirds of the qualified electors at an election held to determine whether any such indebtedness shall be incurred, it is immaterial whether the initial action of the board of trustees in determining the necessity of incurring the indebtedness and ordering the election is expressed in the form of a resolution or by ordinance. But when it comes to the matter of actually incurring the indebtedness, following the ascertainment by a canvass of the votes cast at the election held to determine whether it should be incurred and that two-thirds of the qualified electors voting thereat voted in favor of incurring the indebtedness, section 3705 provides that it shall be the duty of the board of trustees "to pass an ordinance providing for the mode of creating such indebtedness and of paying the same;" which ordinance shall make provision "for the levy and collection of an annual tax upon all real and personal property subject to taxation within said town, sufficient to pay the interest on such indebtedness as it falls due; and also to constitute a sinking fund for the payment of the principal and interest thereof within a period of twenty years from the time of contracting the same."

The opinion in City of Louisville v. Parsons, 150 Ky., 420, does not militate against the conclusion we have expressed. In that case the questions raised were whether the city, in employing a commission to audit the books and accounts of the Louisville Water Company incurred an indebtedness in excess of the limitation contained in section 157 of the Constitution; and whether the employment of the commission could be provided for by a joint resolution of the city council instead of an ordinance.

With respect to the second question it was held that the council could not by resolution incur the indebtedness, and in disposing of the question we said:

"In making this broad statement we do not overlook or put aside the general rule that where the charter of a city is silent as to the manner in which legislation may be enacted it may be enacted by resolution or ordinance. Board of Education v. DeKay, 148 U. S., 501, 37 Law Ed., 573; City of Crawfordsville v. Braden, 130 Ind., 149, 14 L. R. A., 268; McGavock v. Omaha, 40 Neb., 64; Green v. Cape May, 41 N. J. L., 45; Illinois Trust Co. v. Arkansas City, 76 Fed., 271. We rest our decision upon the ground that the charter of the city is not silent in this respect but on the contrary expressly, or by necessary implication, provides that all legislation affecting the material or substantial rights of the city shall be enacted by ordinance. We find no authority in the charter of the city, which is the origin and source of its power, to enact by resolution legislation of the character found in this resolution, and in the absence of such authority, the provisions of the charter forbid legislation by resolution. Meyer v. Booneville, 162 Ind., 165; Cascaden v. Waterloo, 106 Iowa, 673; Barraw v. Krebs, 41 Kan., 338."

In the charter of towns of the sixth class the words "ordinance" and "resolution" seem to be used as synonymous terms, the word "ordinance" being more generally employed in such of its provisions as confer authority upon the municipality to collect license fees, impose taxes, make contracts, incur liabilities, make appropriations exceeding $50.00, and in legislating in the exercise of the police power. In some other jurisdictions it has been held that a formal resolution by the council of a municipality will be construed to be an ordinance, if it is such in construction and intention and has been duly passed and promulgated in the mode required for ordinances. Kerling Bros. v. Toledo, 20 Ohio Cir. Ct., 603; Mulberry v. O'Dea, 4 Cal. App., 385; Tipton v. Norman, 72 Mo., 380; but in determining the question under consideration we are controlled by the language of section 3705, Kentucky Statutes, which permitted the board of trustees of Anchorage by resolution to determine the necessity of the municipality's incurring the indebtedness of $25,000.00 and give notice of the election that the qualified electors of the town might approve or disap-

prove the proposition, and only required them to act by ordinance in actually incurring the indebtedness and providing the mode for its payment, after ascertaining from a canvass of the votes cast at the election that the matter of incurring the indebtedness had been approved by two-thirds of the qualified voters voting thereat.  Iglehart v. City of Dawson Springs, 143 Ky., 140; O'Brien v. City of Owensboro, 113 Ky., 680; Fowler v. City of Oakdale, 158 Ky., 603.  It follows from what has been said that appellant's first objection to the validity of the bond issue cannot be sustained.

Appellant's second and third contentions are equally without merit, for the notice of the election is not, as claimed, silent either as to the amount of indebtedness proposed to be incurred in the issue of the bonds or as to the amount necessary to be raised annually by taxation for an interest and sinking fund.  On the contrary, it specifically states that the indebtedness to be incurred would not exceed $25,000.00, and that the amount to be raised by taxation to create a sinking fund for the payment of the principal and interest on the bonds, would not exceed $2,750.00 in each year.  These amounts placed a limitation upon the indebtedness to be incurred and advised the electors of the town that by voting to incur the indebtedness they would pledge its credit to those amounts.  Moreover, the ordinance providing for the issue, sale and payment of the bonds and making the annual tax levy for creating the sinking fund to pay the interest thereon and retire the bonds at maturity, passed after the election and before the issuance of the bonds, definitely fixed the total indebtedness incurred at $25,-000.00, and the annual tax levy at $2,750.00 to create the sinking fund for paying the interest on the bonds and retiring them at maturity.

As the judgment of the circuit court conforms to the conclusions expressed in this opinion, it is affirmed.