## German National Bank of Covington v. City of Covington.

(Decided April 23, 1915.)

### Appeal from Kenton Circuit Court (Common Law and Equity Division).

Municipal Corporations—Street Improvements—Bonds—Municipal Indebtedness—Constitutional Limit.—Where street improvement bonds, secured by lien on abutting property and by the pledge of the city's credit, are issued by the city and accepted by the contractor in payment for the work, and payment thereof in full cannot be enforced against the abutting property, and the bonds are invalid, because they create an indebtedness in excess of the revenue and income provided for the year without a vote of the people, contrary to Section 157 of the Constitution; the difference between the amount collectible from the abutting property and the face of the bonds cannot be collected from the city on the theory that it became personally liable, because it had no power to order the improvement at the expense of the abutting property in excess of 50 per cent. of its value. The claim that the obligation upon the city is one imposed by law, does not prevent the debt limit provision of the Constitution from applying.

S. D. ROUSE, R. C. SIMMONS and H. B. MACKOY for appellant.

FREDERICK W. SCHMITZ for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Cities of the fourth class are authorized to improve streets at the cost of the abutting property, and to issue street improvement bonds (Sections 3572-7, Kentucky Statptes), but have no authority to assess the abutting property in excess of one-half the value thereof after the improvements are made (Section 3578, Kentucky Statutes). Cities of the second class are also authorized to improve streets on the ten-year bond plan, and to issue the bonds of the city, secured by liens on the abutting property, and also to pledge the faith and credit of the city for the payment of the bonds. Section 101, Kentucky Statutes.

Prior to July 29, 1909, Latonia was a city of the fourth class. During the period immediately preceding that date, it ordered the improvement of a number of its streets on what is known as the ten-year bond plan. On the above date, the City of Latonia was annexed to the City of Covington, a city of the second class. Some of the streets under course of construction at the time of the annexation were subsequently completed and the cost provided for by the City of Covington. Among the streets so improved is Randall Avenue. The cost of the improvement was $2,962.48, which sum was asssessed on eight lots of the Green subdivision. After the street was so improved, it developed that these lots were worth only $2,338.94, and could be put in lien for only one-half that amount, or $1,169.47. The cost of the improvement, therefore, exceeded fifty per cent of the value of the property to the extent of $1,793.01. The City of Covington issued bonds for the cost of the work, and pledged for the payment thereof not only the special fund accruing from the collection of the assessment of the abutting property, but also the faith and credit of the city. The issue of bonds was taken over by the contractor, and subsequently a number of these bonds were sold to various parties, including the German National Bank.

This action was brought by the German National Bank to recover on three of these bonds. A personal judgment was sought against the city. The city defended on the ground that no vote of the people authorizing the indebtedness was ever had, and that the indebtedness exceeded the revenue and income for the year for which it was incurred, and was therefore void

under Section 157 of the Constitution. On final hearing the trial judge gave judgment for plaintiff for the amount collected, and to be collected, from assessments on the abutting property, but declined to give any personal judgment against the city for that portion of the bonds not secured by liens on the abutting property. From that judgment the bank appeals.

Section 157 of the Constitution provides in part as follows:

"No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

It is admitted in this case that the indebtedness was not authorized by a vote of the people and that it exceeds the revenue and income provided, or that could be provided, for the year in which it was incurred.

We have frequently held that contracts for local improvements, the cost of which is to be borne wholly by the property benefited, form no part of the indebtedness of the municipality within the meaning of Section 157 of the Constitution. The reason for the rule is that the contractor or holder of the bond must look alone to the fund created by the collection of the assessments on the abutting property and the city is a mere agency for collecting the assessments and custodian of the fund when the assessments are collected. City of Catlettsburg v. Self, 115 Ky., 669; 25 Ky. Law Rep., 163; Adams v. Ashland, 26 Ky. Law Rep., 184, 80 S. W., 1105; Guilfoyle v. Maysville, 129 Ky., 352, 125 S. W., 66; Quill v. City of Indianapolis, 7 L. R. A., 681. On the other hand, the fact that local improvement bonds are to be paid out of assessments which are made a lien upon the property benefited does not render them legal on the theory that they do not create an indebtedness against the city where the bonds provide for the pledging of the faith of the city for the payment of the principal and interest thereon. City of Covington v. McKenna, 99 Ky., 508, 36 S. W., 518; City of Covington v. Nadaud, 103 Ky.,

445, 20 Ky. Law Rep., 151; Gedge v. City of Covington, 26 Ky. Law Rep., 273, 80 S. W., 1160. Here the improvement bonds are not payable wholly out of a special fund derived from the assessment on the property benefited. The faith and credit of the city are pledged for their payment. They are, therefore, a personal obligation of the city, and since they represent an indebtedness in excess of the revenue and income for the year in which the indebtedness was incurred without a vote of the people, they come within the inhibition of the Constitution and are null and void.

The above propositions are conceded, but counsel for the bank insist that the city is liable for the deficiency on an entirely different theory. Briefly stated, their position is this: Where the city has the power to make the improvement, but none to charge it upon the abutting property, the city itself becomes liable. City of Louisville v. Bitzer, 115 Ky., 359, 61 L. R. A., 434, 73 S. W., 1115; Caldwell v. Rupert, 10 Bush, 179; Louisville v. Nevin, 10 Bush, 549, 19 Am. Rep., 78; Craycraft v. Selvage, 10 Bush, 696. The constitutional provision applies only to a contractual indebtedness. O'Bryan v. City of Owensboro, 113 Ky., 680; Overall v. City of Madisonville, 125 Ky., 684; Fowler v. City of Oakdale, 158 Ky., 603, 166 S. W., 195. It does not apply to an obligation imposed by law. 28 Cyc., 1541. Here the city had the power to make the improvement but no power to assess the cost thereof against the abutting property in excess of 50% of its value. That being true, the case falls within the rule laid down in the above cases. The law itself imposes upon the city the obligation to pay, and that being true, the debt limit provision of the Constitution does not apply. There are authorities which tend to support this position. Thus in the case of Addyston Pipe & Steel Company v. City of Corry, 197 Pa., 41, the city entered into a contract for the construction of a sewer for the price of $57,000.00. Of this sum $9,300.00 was to be paid out of the general sewer fund and the remainder to be assessed upon the property benefited. The city paid its part of the cost; the remainder was assessed on the property benefited, including abutting and non-abutting property. All of the assessments on the abutting property were paid; the assessments on the non-abutting property were held invalid. The city was held liable for the deficit, although

the indebtedness exceeded the constitutional limit. The court said:

"In the present case the City of Corry provided the contract price of the sewer by an appropriation of money which, as already said, we must assume to have been in the treasury, and by assessments upon the property benefited. There is nothing to indicate that these assessments were not in good faith and reasonable expectation supposed to be adequate to produce the required fund and offered and accepted by the contracting parties in the mutual belief in their validity. So far as they were upon abutting property they fulfilled their intended purpose. The distinction in regard to non-abutting property had not then been made, and was not in contemplation of either side. When it was determined that this part of the agreed means of payment would be unavailable, the loss should in equity and justice fall on the city which has received the full consideration stipulated for, and to this extent paid nothing.

"The cases on this subject are conflicting. See Dillon on Municipal Corporations (4th Ed.), Secs. 480-482 and notes. They show that there is no disposition of the question which is wholly free from difficulty. We have preferred to follow the line which we think not inferior in just legal reasoning, while clearly superior in the honesty and justice of the result reached."

Following the rule above laid down, the same court held in the case of Gable v. Altoona, 200 Pa., 15, that where a city in good faith provides that bonds for street paving shall be payable out of assessments on property, and it turns out that such assessments are illegal because of the improper manner in which the ordinances authorizing them were enacted, the city is liable for the bonds although at the time of their issue they increased the debt beyond the constitutional limitation.

In the case of Fort Dodge Electric Light & P. Co. v. Fort Dodge, 115 Ia., 568, the court held that where a municipal contract for street improvements provided that the contractor should receive the special assessment certificates in payment, the city's liability for damages resulting from an erroneous assessment upon property not liable is not an incurring of indebtedness, so as to fall within the prohibition of Constitution, Article 11, Section 3, prohibiting municipal corporations from becoming indebted to an amount in excess of 5 per cent of the value of its taxable property, since the constitu-

tional provision did not apply to a liability arising from a wrongful act. The ground on which the decision is rested is shown by the following quotation from the opinion:

"It was not by any voluntary act of the contractor that the city became indebted to him, and it was not contemplated by the contract that in this respect the city should become his debtor; but, by its own negligence in failing to perform a duty which it had lawfully assumed, a claim against the city in favor of the holder of these certificates has arisen. It does not matter whether this breach of duty was a tort, in the technical sense of the term, or not. The constitutional limitation does not make any such distinction. Nor do we think that it is conclusive to say that the obligation is one arising by implied contract. No doubt, some obligations arising by implied contract are within the prohibition of the constitutional clause. If the city should direct the improvement to be made without any express contract therefor, and without any arrangement for payment by assessment on abutting property, the obligation to make payment of the reasonable cost to one who should perform the work would be an obligation by implied contract; but it would be an obligation voluntarily assumed, as between the city and the contractor, and would create an indebtedness, within the terms of the constitutional provision. The liability of the city here is one growing out of negligent omission to do that which the city had the right to do, and which, if done, would not have involved any creation of indebtedness, and therefore we think the constitutional limitation does not apply."

In the case of Little v. City of Portland, 26 Ore., 235, it was held that a stipulation in a contract with a city for a public improvement that the contractor should look for payment to a particular fund to be raised by assessment, did not relieve the city from liability for negligently delaying to raise such fund, and that the city was liable even though its limit of indebtedness had been reached.

Without approving the doctrine laid down in the above cases, it seems to us that they are clearly distinguishable from the case under consideration. Indeed, it is plainly pointed out in the Iowa case that the city did not become indebted to the contractor by any voluntary act on the part of either. The liability of the city was based solely on its negligence in failing to perform

the duty which it had lawfully assumed. Here the indebtedness was created by the voluntary action of both debtor and creditor. The city agreed to issue its bonds and did issue them. The contractor agreed to accept the bonds and did accept them. The obligation thus imposed by the voluntary act of both parties exceeded the constitutional debt limit and was, therefore, void. Here the contractor looked to the bonds for payment. The bank took the place of the contractor; relying on the faith and credit of the city it made the purchase. The suit itself is to recover on the bonds. Whatever liability the city incurred was merged in the bonds. In our opinion, it would be a mere jugglery of words to say that the bonds are invalid because they exceed the debt limit and yet allow a recovery based on the fact that the city did not have the power to assess the abutting property in excess of 50% of its value. We often find courts saying that a certain decision, which has the effect of annulling debt limit provisions, is in the interest of honesty and justice. In laying down a just rule in such cases, however, two parties are to be considered: the contractor, on the one hand, and the taxpayers on the other. In order to apply justice in a particular case we should not announce a rule of law that will lead to great injustice in the future. That this would be the effect if the contention of the bank were sustained cannot be doubted. In every case municipalities could make public improvements without the power of assessing the cost thereof against the abutting property and thus clearly violate the provisions of the Constitution by imposing unlimited burdens on the people. It is true that the rule herein announced may lead to occasional hardship. If so, it is largely of the contractor's own making, for there is no proposition better settled than that one dealing with a municipality must take notice of its debt limit provision. We, therefore, conclude that in the long run the safer plan is to give effect to the constitutional provision and not permit it to be evaded by any refined distinction which has no substantial basis.

Judgment affirmed.