## Wilkerson v. City of Lexington, et al.

### Chinn v. City of Lexington, et al.

### Davis v. City of Lexington, et al.

(Decided June 4, 1920.)

## Appeals from Fayette Circuit Court.

1. Municipal Corporations—Indebtedness—Elections.—The assent of two-thirds of those voting on the question is all that is necessary to meet the requirement of section 157 of the Constitution declaring that no municipality shall become indebted in any year beyond the income and revenue for such year, without the assent of two-thirds of the voters at an election to be held for that purpose.

2. Municipal Corporations—Indebtedness—Constitutional Limitations.—In a suit to enjoin certain bond issues, facts considered and held to show that the proposed indebtedness of the city, together with all existing indebtedness, did not exceed ten per centum of the taxable property therein, as estimated by the assessment next before the last assessment previous to the incurring of the indebtedness as forbidden by section 158 of the Constitution.

3. Municipal Corporations—Cities of the Second Class—Power of the Mayor Pro Tem to Approve Ordinances.—Under subsection 13, section 3235-C, Kentucky Statutes, providing that each resolution, measure or ordinance shall be signed by him (the mayor) or by two commissioners, and further providing that the board of commissioners shall, at the beginning of its term of office,

elect by a majority of all its members one commissioner to act as mayor pro tem, and the commissioner so chosen shall be invested with all the powers and shall perform all the duties of the mayor in the event of his absence from the city, or his inability to attend to the duties of his office, the approval of an ordinance by the mayor pro tem, when the mayor is unable to attend to the duties of his office, has the same effect as the approval of the ordinance by the mayor himself, and its approval by another commissioner is not necessary.

4.   Municipal Corporations—Election on Question of Incurring Indebtedness—Advertisement.—Where, pursuant to section 3069, Kentucky Statutes, the ordinance ordering an election to determine whether an indebtedness in excess of the income and revenue for the year shall be incurred is published for more than two weeks just preceding the election, the advertisement is sufficient, and the fact that the sheriff did not advertise the election, as provided by an order of the county court, will not affect the validity of the election, there being no statute requiring the election to be advertised by him.

5.   Municipal Corporations—Power to Extend Streets and Build Subways Under Railroad Tracks and to Incur Indebtedness and Levy Taxes Therefor.—Under section 3094, Kentucky Statutes, conferring upon the board of commissioners of cities of the second class "exclusive control and power over the streets, roadways, sidewalks, alleys, landings, wharves, public grounds and highways of the city; to establish, open, alter, widen, extend, close, grade, pave, repave, clean and keep in repair the same," the board of commissioners has the power to extend the streets of the city and to construct subways under, or viaducts over, railroad tracks within the city, wherever it deems it necessary for the safety and convenience of the public, as well as the consequent power to levy taxes and incur indebtedness for such improvements.

6.   Municipal Corporations—Public Uses—Power to Purchase Site and Erect Building to House Municipal Offices and for Use as Auditorium.—Under subsection 16, section 3058, Kentucky Statutes, conferring the power "to purchase, rent or lease, within the limits of the city or elsewhere, any real or personal property for the use of the city, and to control, manage, improve, sell or otherwise dispose of the same for such purposes and considerations as they may deem proper for the public welfare," the board of commissioners has the authority to purchase a site and erect thereon a suitable building for housing the municipal offices, and for use as a commodious and convenient auditorium, in which the citizens may exercise their right of assembling and discussing public affairs, and to incur indebtedness and to levy taxes for such purpose.

V^LLACE MUIR for appellants.

WILLIAM H. TOWNSEND, HARRY B. MILLER and JAMES A. WILMORE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming in each case.

These three appeals have been consolidated and will be considered in one opinion.

The suit of H. Freeman Wilkerson against the city of Lexington and its officers was brought for the purpose of enjoining a bond issue of $500,000.00 to provide funds for the purchase of a site or sites, and erection thereon of a building or buildings, to be used as a city hall and auditorium, and for other public purposes. The suit by A. Coleman Chinn was to enjoin a bond issue of $300,000.00 to provide funds for the purpose of defraying the expenses and cost of extending Vine street from Limestone street to Hanover avenue, and Short street from Wilson street to Russell avenue, and to construct a subway at the intersection of West High street with the railroad of the Southern Railway system. The suit by John B. Davis was to enjoin a bond issue of $400,000.00 for school purposes. In each case the city filed a comprehensive answer, setting forth all the steps leading up to each issue and giving a complete financial statement of the city, showing in detail all the indebtedness theretofore existing, the amount of indebtedness proposed to be incurred, together with the prior tax rate and the rate that would have to be levied in order to provide a sinking fund and pay the proposed indebtedness. In each case the demurrer to the answer was overruled, and a judgment was rendered denying the prayer for an injunction and dismissing the petition.

Lexington is a city of the second class, with a population of more than 40,000, and has adopted the commission form of government. Cities of the second class are given authority to issue bonds by section 3069, Kentucky Statutes, which is as follows:

"The general council shall not expend any money in excess of the amount annually levied, collected or appropriated for any special object: Provided, if, in any year, the general council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year, it shall, by ordinance, order an election by the qualified electors of the city to be held, to determine whether such indebtedness shall be incurred. Such ordinance shall specify the amount of indebtedness proposed to be incurred, the purpose or

purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided. Such ordinance shall be published for at least two weeks just preceding the election in the official newspaper in and for such city, or by posting written or printed copies thereof at three or more public places in such city, if there be no such official newspaper. Upon filing by the city of a certified copy of an ordinance ordering such an election with the county clerk of the county in which such city is located, thirty days prior to any regular election, it shall be the duty of the county clerk to cause to be printed upon the ballots, to be used in the city precincts of such county at such election, the question of the issuance of bonds by said city as proposed by such ordinance. The expenses thereof shall be paid as other election expenses are paid. The election shall be held in the manner provided by general law for submitting public measures to a vote of the people, and shall be held at the same time and place, and in the same manner, and by the same officers as the regular election of that year. The votes on said question shall be canvassed and certified by the election officers in the same manner as votes cast in the regular election. It shall be the duty of the county board of election commissioners to canvass the returns of the election on said question, and certify the result thereof at the same time and in the same manner as the returns of the regular election.

If, upon a canvass of the votes cast at such election, it appears that two-thirds of all the qualified voters of said city, voting on said question shall have voted in favor of incurring such indebtedness, the general council may incur such indebtedness and issue bonds of the city in evidence thereof, and it shall be the duty of the general council to pass an ordinance providing for the mode of creating such indebtedness and of paying the same. But such indebtedness shall not, in any event, exceed the limit provided in the Constitution for cities of the second class. In such ordinances provision shall be made for the levy and collection of an annual tax upon all real and personal property subject to taxation within such city, sufficient to pay the interest on such indebtedness as it falls due; and also to constitute a sinking fund for the payment of the principal thereof, within a period of not more than forty years from the time of contracting the same. It shall be the duty of the general council in

each year thereafter, at the time at which other taxes are levied and collected, to levy and collect a tax sufficient for such purpose, in addition to the taxes by this chapter authorized to be levied. Such tax, when collected, shall be kept in the treasury as a separate fund, to be inviolably appropriated to the payment of the principal and interest of such indebtedness. Any member of the general council who shall knowingly vote for any appropriation of money, or for the making of any contract in violation of this act, or any officer of the city who shall knowingly do any act to impose upon the city any pecuniary liability in excess of the authority in this act limited, shall be guilty of a misdemeanor, and, upon conviction, be punished by a fine of not less than one hundred nor more than one thousand dollars, or imprisonment in the county jail not less than one month nor more than one year, or by both such fine and imprisonment."

On September 2, 1919, there was introduced ordinance No. 1611, "Providing for submitting to the qualified voters of the city of Lexington the proposition of incurring an indebtedness of $500,000.00, and issuing bonds of the city therefor, to provide funds for the purpose of the purchase of a site, or sites, and the erection of a building, or buildings thereon, for the purpose of being used as a city hall, an auditorium or for other public purposes." This ordinance in its completed form, remained on file for the period of one week. On September 9, 1919, it was passed by the unanimous vote of the commissioners, and was approved by W. H. McCorkle, the vice mayor, the regular mayor being so ill that he was unable to attend to business. It was then published in the official newspaper. The ordinance specified the amount of indebtedness proposed to be incurred, the purpose of same and the amount of money necessary to be raised annually by taxation for an interest and sinking fund. It further provided for the issuing of bonds and the taking of the sense of the voters thereon at the regular election on November 4, 1919. On October 17, 1919, the ordinance was published in the Lexington Leader, the official newspaper of the city, and in each issue of the paper from said date to November 3, 1919, inclusive. A certified copy of the ordinance was delivered to the county clerk of Fayette county thirty days prior to the election. On motion of the city an order was entered by the Fayette county court on September 23, 1919, ordering and directing the sheriff of said county to open a poll

at each voting precinct in the city at the regular election to be held on November 4, 1919, for the purpose of ascertaining the will of the voters of said city on the issuing of said bonds, and to advertise said election for at least fifteen days in some daily newspaper of the city, and also by printed hand bills posted in one or more conspicuous places at each precinct of the city and at the court house door. The question was placed on the ballot in proper form and duly submitted at the November election. The vote in the affirmative was 2,416, while the vote in the negative was only 851. On December 8, 1919, the board of commissioners enacted ordinance No. 1643, providing for the incurring of the indebtedness and the issuing of the bonds. This ordinance further provided for the levy and collection of an annual tax sufficient to pay the interest on the bonds, and provide a sinking fund for their retirement as they became due. This ordinance remained on file for one week for public inspection before its final passage. It was then passed by the unanimous vote of the board of commissioners, was approved by the mayor, was published in the official newspaper and took effect on December 15, 1919.

On August 29, 1919, there was introduced ordinance No. 1606, "Providing for submitting to the qualified voters of the city of Lexington the proposition of incurring an indebtedness of $300,000.00, and issuing bonds of the city therefor, to provide funds for the purpose of defraying the expenses and costs of extending Vine street from Limestone street to Hanover avenue, and Short street from Wilson street to Russell avenue, and construct a subway at the intersection of W. High street with the railroad of the Southern Railway system." The ordinance in its completed form remained on file one week for public inspection, and was passed by unanimous vote of the commissioners on September 5, 1919. It was then approved by the vice mayor, the mayor being too ill to attend to business, and was published in the Lexington Leader, the official newspaper of the city. This ordinance also specified the amount of indebtedness proposed to be incurred, the purpose of same and the amount of money necessary to be raised annually by taxation for interest and sinking fund. It further provided for taking the sense of the voters thereon at the regular election to be held in November. Thereafter, the same steps were taken with reference to this ordinance as were taken with reference

to ordinance No. 1611. The question of incurring the indebtedness and issuing the bonds was submitted in proper form to the voters at the regular November election. The vote in the affirmative was 2,525, while the vote in the negative was 904. On December 8, 1919, there was introduced ordinance No. 1642, authorizing the issue of the bonds. This ordinance remained on file for one week for public inspection in its completed form, and was passed by unanimous vote of the commissioners on December 5, 1919. It was then approved by the mayor and published in the official newspaper as required by law. This ordinance levied an annual tax sufficient to pay the interest and principal as the bonds became due.

On August 28, 1919, the board of education of the city of Lexington passed a resolution setting forth the necessity of issuing bonds in the sum of $400,000.00 for the purchase of sites, the erection and equipment of new school buildings, and for the improvement of the buildings already in use, and asked the board of commissioners to adopt the necessary ordinances for the purpose of submitting to the qualified voters of the city of Lexington at the regular election to be held on November 4, 1919, the question of incurring said indebtedness and issuing said bonds. Pursuant to the resolution of the board of education, there was introduced on August 29, 1919, ordinance No. 1608, "Providing for submitting to the qualified voters of the city of Lexington the question of incurring an indebtedness of $400,000.00 and issuing bonds of the city therefor, bearing five per centum interest per annum, payable semi-annually, to provide funds for the proper accommodation of the schools of said city, to acquire sites for school buildings, to erect a new junior high school building for white children, a high school building for negro children, and to improve, remodel and make additions to other public schools in said city and to enlarge the site thereof." This, ordinance remained on file in its completed form for one week, and was passed by the unanimous vote of the commissioners on September 5, 1919. It was then approved by the vice mayor, the mayor being ill and unable to attend to business, and was published in the official newspaper as required by law. This ordinance specified the amount of indebtedness proposed to be incurred, the purpose of same and the amount of money necessary to be raised annually by taxation for an interest and sinking

fund. It also provided for taking the sense of the voters thereon at the regular election to be held on November 4, 1919. The question was duly submitted to the voters at that election. The vote in favor of the proposition was 6,003, and the vote against the proposition, 1,778. On December 8, 1919, there was introduced ordinance No. 1,641 authorizing the issue of the bonds and providing for the levy of an annual tax sufficient to pay the interest thereon and the principal thereof as the bonds became due. This ordinance in its completed form remained on file for one week for public inspection. It was passed on December 15, 1919, by the unanimous vote of the commissioners. It was then approved by the mayor and published in the official newspaper as required by law.

(1) It is apparent from the foregoing statement that each of the bond issues received the assent of more than two-thirds of those voting on the question, and under the repeated decisions of this court, this was all that was necessary in order to meet the requirement of section 157 of the Constitution, declar'ng that no municipality shall become indebted in any year beyond the income and revenue for such year, without the assent of two-thirds of the voters at an election to be held for that purpose. Logan, &c. v. Gilbert, 151 Ky. 659, 152 S. W. 778; Fowler v. City of Oakdale, 158 Ky. 603, 166 S. W. 195; City of Marion v. Haynes, 157 Ky. 687, 164 S. W. 79.

(2) Section 158 of the Constitution provides in substance that a city of the second class, having a population of more than 15,000, cannot incur an indebtedness, including existing indebtedness, in excess of ten per centum of the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness. Aside from a floating indebtedness of $108,761.46, which was provided for in the 1920 levy, the entire indebtedness of the city is $1,464,336.52. The proposed indebtedness herein involved is $1,200,000, in addition to a bond issue of $75,000.00 for a memorial building, the validity of which is not now before us. According to the 1918 assessment, which is controlling in these cases, the total value of the taxable property in the city was $33,140,954.00. It is therefore apparent that the indebtedness proposed to be incurred, together with the existing indebtedness of the city, will not exceed ten per centum of that amount.

(3) Subsection 13, section 3235-c, Kentucky Statutes, is in part as follows:

"The mayor shall preside at meetings of the board. He shall have no veto power. But each resolution, measure or ordinance shall be signed by him, or by two commissioners, and recorded before it shall take effect.

"The board of commissioners shall, at the beginning of its term of office elect, by a majority of all its members, one commissioner to act as mayor *pro tem.;* and the commissioner so chosen shall be invested with all the powers and shall perform all the duties of the mayor, in the event of his absence from the city or his inability to attend to the duties of his office."

In view of the requirement that each resolution, measure or ordinance shall be signed by the mayor, or by two commissioners, it is insisted that it was essential to the validity of the ordinances signed by the mayor *pro tem.,* that they should have been signed by another commissioner. With this contention we cannot agree. The statute invests the mayor *pro tem,* with all the powers of the mayor, if the latter is absent from the city or unable to attend to the duties of his office. Hence, when the mayor *pro tem.* approves an ordinance, he does so not as a commissioner, but as mayor and his approval has the same effect as the approval of the ordinance by the mayor himself. It is admitted that at a regular meeting of the board of commissioners held on January 7, 1918, W. H. McCorkle, a commissioner, was duly and regularly elected vice mayor, or mayor *pro tem.,* for the years 1918 and 1919. It further appears that at the time he approved the ordinances in question the mayor was suffering from a serious illness which prevented him from attending to the duties of his office, and from which he subsequently died. Under these circumstances, McCorkle, as vice mayor, or mayor *pro tem.,* had the right to approve the ordinances, and the approval of another commissioner was not necessary.

(4) Another contention is that the election was invalid because the sheriff did not advertise the election as required by the orders of the county court. There is no statute requiring the sheriff to advertise the election. The power to order the election is conferred upon the general council, or the board of commissioners, where the commission form of government has been adopted. Section 3069 and subsection 12, section 3235c, Kentucky Statutes. The only advertisement required is the pub-

lication of the ordinance itself for at least two weeks just preceding the election in the official newspaper, or by posting written or printed copies thereof at three or more public places in the city, if there be no such official newspaper. Section 3069, Kentucky Statutes. The ordinances ordering the elections in question were each published in the official newspaper from October 17th to November 3rd inclusive, or for a period of more than two weeks just preceding the election. That being true, the elections were properly advertised and the failure of the sheriff to advertise them in no wise affected their validity.

(5)    Section 3094, Kentucky Statutes, confers upon the general council of cities of the second class, and hence upon the board of commissioners where the commission form of government has been adopted, subsection 12, section 3235c, Kentucky Statutes, "exclusive control and power over the streets, roadways, sidewalks, alleys, landings, wharves, public grounds and highways of the city; to establish, open, alter, widen, extend, close, grade, pave, repave, clean and keep in repair the same." In view of the broad authority thus conferred, it cannot be doubted that the board of commissioners has the power to extend the streets of the city and to construct subways under, or viaducts over, railroad tracks within the city, wherever it deems it necessary for the safety and convenience of the public, as well as the consequent power to levy taxes and incur indebtedness for such improvements. 19 R. C. L., p. 782; Argentine v. Atchinson, etc., R. Co., 55 Kan. 730, 41 Pac. 946, 30 L. R. A. 255.

(6)    Subsection 16, section 3058, Kentucky Statutes, confers upon the general council of cities of the second class, and hence upon the board of commissioners where the commission form of government has been adopted, the power "to purchase, rent or lease, within the limits of the city or elsewhere, any real or personal property for the use of the city and to control, manage, improve, sell or otherwise dispose of the same for such purposes and considerations as they may deem proper for the public welfare." Clearly the power to purchase and improve real estate for such purposes and considerations as the board of commissioners may deem proper for the public welfare is very broad and comprehensive, and carried with it full authority to purchase a site and erect thereon a suitable building to house the municipal offices, and for use as a commodious and convenient auditorium in which

the citizens may exercise their right of assembling and discussing public affairs, and this power carries with it as a necessary incident the further power to incur indebtedness and levy taxes for such purpose. Wheelock v. City of Lowell, 196 Mass. 220, 81 N. E. 977, 124 A. S. R. 543; Bates v. Bassett, 60 Vt. 530, 15 Atl. 200, 1 L. R. A. 166; Greely v. People, 60 Ill. 19; Bell v. Platteville, 71 Wis. 139, 36 N. W. 831; Eastman v. Meredith, 36 N. H. 284, 72 Am. Dec. 302; Jones v. Sanford, 66 Me. 585; Clark v. Brookfield, 81 Mo. 503, 51 Am. Rep. 243; 1 Dillon on Municipal Corporations, sec. 30.

On the whole we perceive no reason why the chancellor's ruling in each case should not be sustained.

Judgment affirmed in each case.